Wiggins v. Leonard.

*Appeal from Greene District Court.*

MONDAY, JUNE 27.

## WIGGINS V. LEONARD.

1. CONFEDERACY: ACTS AND DECLARATIONS. The declarations and acts of a confederate are admissable in evidence only after the confederacy has been established by proper proof.
2. SAME: INSTRUCTIONS. When evidence is permitted to go to the jury, tending to prove a combination or confederacy, and showing declarations and acts made and done by one of the confederates, the court should, by instructions, clearly point out the distinction between evidence admitted for the purpose of establishing the confederacy and that which is to be considered only after the confederacy has been proved and found by them. The jury should also be instructed as to the persons who must be found united in the confederacy.
3. AGENCY: ADMISSIONS OF AN AGENT. The acts and declarations of an agent, made and done in connection with the transaction of business for his principal, which is the subject matter of controversy, are admissible in evidence to bind the principal.
4. SAME: CONTINUING AGENCY. The authority to buy a mortgage is not a continuing agency, and acts and declarations done and made by the agent, after such a purchase for his principal, are not admissible in evidence to bind the principal.

*Appeal from Scott District Court.*

MONDAY, JUNE 27.

On the 28th or November, 1855, the plaintiff filed his petition against the defendant, in an action of trespass, for taking and carrying away certain goods, wares and merchandize, the property of the plaintiff, on the 28th of August, 1855, and converting them to his own use, to the damage of the plaintiff in the sum of two thousand dollars.

The plaintiff claims that one Haskins, being the owner of the goods and in possession, on the 5th day of June, 1855, gave a note to Henry C. Lane for $1800, money borrowed, and executed a mortgage on the goods, to secure the payment thereof; and that he, the plaintiff, purchased the note and mortgage of Lane, before maturity, and before the defendant took the goods. The note was payable in sixty days, and the indorsement bears date on the day after the making. The assignment of the mortgage is of the 18th of August, 1855. On the note, are two indorsements of payments.

The defendant pleaded not guilty, and also justified as sheriff of Scott county, setting out certain writs of attachment against Haskins, which he levied on the goods, on different days from the 23d to the 28th of August, as upon the property of Haskins, and alleging that the note and mortgage were fraudulent and void as against the creditors of Haskins; that there was no consideration moving from Lane to Haskins, but that they were executed to Lane, then a clerk in his employment, in order to hinder, delay and defraud the creditors of Haskins; and that Lane was colluding with Haskins, to enable him to defraud his creditors. The defendant further alleges that about the time of the execution of the mortgage, and after, Haskins had in his employment as clerk, one J. M. Wiggins, who was party to, and colluding in said fraud; that he, without consideration, secured the note and mortgage from Lane to himself, but nominally in the name of the plaintiff, who, he charges, has no interest

in them, and never paid anything for them; and he charges that the said J. M. Wiggins did collude and contrive with Haskins and Lane, to defraud the creditors of the former, and to that end took the assignment of the note and mortgage, not for the benefit of the plaintiff, but for himself and Haskins, without consideration, and collusively and fraudulently; and that the plaintiff, knowing the fraud, permits this action in his name for the purpose of aiding and abetting the fraud of the said J. M. Wiggins and Haskins; and he further avers, that the note was paid in full before the alleged trespass.

The cause was tried at the April Term, 1858, in Scott county, when the verdict and judgment were for the defendant. The plaintiff appeals, and assigns errors upon the admission and exclusion of evidence, and the giving and refusal of instructions.

*James Grant*, for the appellant.

*Thompson & Barner* and *Davidson & True*, for the appellee.

WOODWARD, J.—It appears quite manifest that this cause has not received an intelligent and proper trial, although, taking a general view of it, the result may seem unobjectionable. There is much reason to believe, that the true issue was lost sight of, and that a just discrimination was not exercised in regard to the testimony. These two matters were all-important to a right determination of the cause.

The issue upon which the mass of the testimony bore, was, whether the note and mortgage from Haskins to Lane were fraudulent, without consideration, and therefore, as to creditors of Haskins, void. Bearing upon much of the testimony which was offered to support the affirmative of this issue, was the question of a combination to carry on this fraud. The testimony of Childs, Barner, Durbin, and a large portion of that of J. M. Wiggins was not admissible, unless the same Wiggins was first found to be in such combination. Now, there is no instruction to the jury upon the subject of

this combination, nor relative to the evidence as connected with it. The doctrine of the law is, that a confederacy *having been established*, certain evidence, otherwise inadmissible, may be received to show the supposed fraud. The confederacy is pre-supposed, and must be fixed at some time, and it must be made out by other evidence than that which shows the fraud. The same acts which, proven, go to show the combination, cannot be taken, at the same time, to show the fraud; for this proof of the fraud, is admitted only because the confederacy is first assumed to be shown. This doctrine applies, mainly, if not entirely, to proof coming from a supposed confederate.

Again; it is of the first degree of importance, that we consider who is charged as being in the combination and practicing the fraud. In this case, it is charged that Haskins and Lane, and J. M. Wiggins, were in the fraud, and that the plaintiff was so far connected, that he lent his name as a party to this suit. The defendant seeks to show a confederacy between the three persons first named, and, this being established, to make use in evidence, of declarations and acts of J. M. Wiggins. This is the direction given by the pleadings, and it is the only position the party can place the matter in; but, at the same time, in his argument upon it, there is a degree of obscurity and uncertainty as to who he claims to have been united in the purpose.

Upon this subject, of a controlling importance in the progress and the result of the case, the court gave no instruction—no direction to the jury, as to the distinction between the evidence which should go to establish the combination, and that which was to be received, only in case such confederacy was first proven and found by them, or as to the parties who should be found united in it. This became the more important, inasmuch as a large portion of each of the classes of proof, must be found in the acts and declarations of the same person—that is, J. M. Wiggins. For aught that appears, all of the testimony went to the jury, in mass, to make out both of these points, perhaps from identically the

same acts and declarations. We do not intend to signify, that a definite time between parts of the evidence, directing what shall be taken to prove one, and what the other of these things, can be drawn by the court, but that the jury should be instructed in respect to this difference, and not be left to find the conspiracy from certain acts or declarations, and then from *the same*, to find that to prove which they were receivable only upon the conspiracy being first proved.

Again; the charge being that the combination existed between Haskins, Lane and J. M. Wiggins, we are constrained to regard the verdict, taken in this point of view, as against the evidence, for the first two of these are the persons with whom the conspiracy must of necessity have existed primarily, in order to give it any efficacy, and in regard to them, the evidence is essentially defective. There is none implicating Lane, and but the slightest amount bearing on Haskins. In truth, it must be said that there is none, except a declaration or act of J. M. Wiggins; which is admissible only upon the pre-supposition of a combination. And this individual instance, illustrates the importance of the remarks above, concerning the bearing of this testimony. There is nothing tending to implicate Haskins, save a joint declaration and act of J. M. Wiggins; and these cannot be used as a double edged sword, cutting both ways at the same time.

The admission of these acts and declarations of J. M. Wiggins, is advocated upon yet another ground. Whilst it is sought upon the ground of his participation in a fraud, it is also claimed that they are the acts and declarations of an agent. Wiggins, when examined as a witness, stated that he was the agent of C. W. Wiggins and L. M. Farnsworth, in the business of selling land and loaning money; and that as agent of Charles W., he transacted the business of buying the note and mortgage from Lane, and paid him $1500, therefor. The court instructed, upon this point, distinctly, that his acts and declarations done and made in connection with the transaction of the above business, were admissible, but not otherwise. The admission upon this ground, being more

urged than upon that of combination, a considerable portion of the instructions is devoted to this subject. His acts, &c., done at subsequent and different times, are not admissible. To render them so, they must have been connected with the act of agency. 1 Greenl. Ev., sec's 114, 115. He continued the agent of his brother and Farnsworth in the land and loaning business, but that is not sufficient. His act of buying the mortgage, is not a continuing agency, so as to allow the admission under it of these declarations.

We apprehend that it is sufficiently apparent, that the jury must have received the testimony of the acts and declarations of J. M. Wiggins; and if they did so, upon this ground of his agency, the verdict is here without evidence, and against the instruction of the court. This is regarded as clear, for the court instructed as above stated, and the declarations, &c., were detached, disconnected, and in no wise related to his agency. Under the rule given by the court, they should not have been regarded.

This view, of course, is not intended to exclude this testimony, when it could legitimately be regarded as contradicting the witness J. M. Wiggins. For instance, Childs' testimony is further claimed as having this effect, in respect to his denial, "that he went to Chicago, to buy goods for this store (Haskin's,) in the spring of 1855." But there is an error here, based on a mistake as to Wiggins' testimony. He did not deny this. Three questions are asked him, all which either ask him if he did not, or assume that he did, go *with Haskins*, which he denies. The association with Haskins is the point, and a material part of the questions. He was not asked, as to, and does not deny, the going alone.

Upon the foregoing subject we would remark, in conclusion, that from the instructions given to the jury, it would not happen that the question of a combination had entered into the trial of the cause. If it was relied upon, there was great necessity, that there should have been instruction both in respect to the period at which, or the circumstances under which, they might receive evidence of the acts or decla-

rations of a confederate, and in respect to the persons who must be found united in the common purpose. But this subject is not mentioned, and consequently neither was Haskins, Lane, nor C. W. Wiggins, in this connection. The first two of these, are named in connection with the *bona fides* of the giving and transfer of the note and mortgage; but this was a branch of the case, not necessarily connected with the idea of a combination with others to defraud. The consequence was, that the testimony of Barner, Durbin and Childs, with the declarations of J. M. Wiggins, went before the jury in mass, without directions how and where they should be heard or applied, and of course to be applied without rule, and as the jury might be impressed by them.

The court refused to give any of the instructions requested by the plaintiff, of which there were several, and which were pertinent, at least, and some of them might properly have been given in substance; and though the court gave a series, apparently intended to cover the case, yet they did not touch upon several points requested by the plaintiff. Beside, the subject of collusion, above referred to, and upon which the court should have instructed, there was no instruction upon the various matters which were introduced through the medium of the declarations and acts of J. M. Wiggins, portions of which could not be received without some limitation as to their effect. A detailed examination of the various witnesses' testimony, and of the points made, would require much more time and space than we are able to give. A new trial will give an opportunity for a more careful and just discrimination as to what evidence is admissable, as well as to the purposes for which it is receivable; and we think justice requires that this should take place.

The judgment of the District Court will be reversed, and a new trial granted.