STATE OF IOWA v. J. T. McINTOSH, ARTHUR R. GROSVENOR, CHRISTINA GROSVENOR, and THOMAS JEFFERSON, Defendants, THOMAS JEFFERSON, Appellant.

**Evidence.** In a prosecution for conspiring to defraud certain counties by falsely claiming wolf bounty, the auditor of one of them testified that the hides presented appeared old, and smaller and darker than those ordinarily presented. Hides found in defendant's possession at the time of his arrest were of a species not found within the state. The auditor on cross-examination, testified that he did not think the wolves were found in his county, but qualified his answer by stating that what he meant was that he did not see them killed. *Held,* in view of the previous evidence, it was not error to allow him to state, on re-examination, that from their appearance he did not believe they were killed in his county.

**CONSPIRACY.** In a prosecution for conspiring to defraud several counties by the collection of wolf bounty, the admission in evidence of two claims by an alleged co-conspirator against a county, and the warrants issued thereon, is proper, when accompanied

VOL. 109 Ia—14

with an instruction that their weight against defendant depends on the establishment of the conspiracy.

SAME. Where defendants were charged with filing fraudulent claims for wolf bounty in various counties, evidence of the auditors of such counties that defendants had filed such claims in their offices, claiming bounty for wolves so killed, is admissible to show the conspiracy.

SAME   Where, on the trial of defendant for conspiracy in fraudulently claiming wolf bounty from certain counties, it was shown that he had given and was known by an assumed name, the testimony of the auditor of a county is admissible to prove that he had received a letter signed by such name, containing an order by a co-conspirator, asking that money on a claim filed by him be sent to a certain address, and later a letter signed by the same name, asking that it be sent to another address.

ADMISSION BY SILENCE.   On a trial of defendant for conspiracy, a conversation between certain of his co conspirators, made in his presence, and not repudiated by him, is admissible as against him, though it is not shown that he made any of the statements.

HARMLESS ADMISSION OF.   Where, in a prosecution for conspiring to defraud several counties by the presentment of fraudulent claim for wolf bounty, a witness is permitted to testify against defendant's objection, that he had not seen any of the conspirators kill any wolves, such evidence, though inadmissible, is without prejudice.

SAME.   Where, a book found near a camp of certain alleged conspirators was admitted in evidence, the denial of a motion by one of them to strike it out is without prejudice, where nothing further concerning it appeared.

EXPERTS.   Where in a prosecution for conspiracy to defraud certain counties by claims for wolf bounty, there is evidence that hides presented, and others found in defendant's possession at the time of arrest, were old, and smaller and darker than those ordinarily presented on claims in Iowa, experts are properly admitted to prove that such hides were from a species not found in Iowa, but common in Nebraska and west of the Missouri.

Exhausting Challenges: WAIVER.   Where accused fails to exhaust his challenges, and the jurors by whom he was tried were legally qualified in all respects, his acceptance of the jurors waives all exceptions to the manner in which they were drawn unless it be that those sitting were not legally qualified, the rule being applied to a case where the court directed the panel to be filed by drawning and that the clerk do not draw any one exempt from jury service.

*Appeal from Madison District Court.*—HON. JAMES D. GAMBLE, Judge.

TUESDAY, OCTOBER 10, 1899.

THE defendants were jointly charged by indictment with the crime of conspiring and confederating together to defraud and cheat, by false pretenses and representations, the counties of Madison, Dallas, Guthrie, Polk, Marion, Page, Mills, Ringgold, and other counties in the state of Iowa. The appellant, Thomas Jefferson, was separately tried, and a verdict of guilty returned against him, upon which the court rendered judgment of imprisonment in the penitentiary for a period of two years and six months, from which judgment the defendant Thomas Jefferson appeals.— *Affirmed.*

*Argo & Middlekauff* for appellant.

*Milton Remley,* Attorney General, for the State.

GIVEN, J.—I. It appears that in impaneling the jury, after exhausting the regular panel, when the clerk was about to proceed to draw from the tales-box, the court directed as follows: "The Court: One of the jurors summoned as talesman in the last panel issued, appearing and offering sufficient excuse,—reason for excuse,—was by the court excused; and it appearing to the court that the other person named in the venire drawn to serve as a talesman is not in the city, but is in the country, and will not return until noon, the court, on its own motion, directs the clerk to proceed and draw from the talesmen's box the names of two persons to serve as talesmen on the trial in this case, omitting the names of any that he knows to be exempt from jury service, or any that may be absent from the territory," —to which order and ruling the defendant at the time excepted. Appellant complains of this action of the court.

Such action is fully authorized by section 349 of the Code, and that section was strictly pursued in this instance, except that the court directed the clerk to omit the names of any whom he knew to be exempt from jury service, while the language of the statute is that the court may direct the clerk to reject "those known to be unable to serve."

It is true that a person exempt may be qualified and able to serve, but it does not appear in this case that any prejudice resulted to the defendant from the order of the court. So far as appears, he did not exhaust his challenges, and the jurors by whom he was tried were legally qualified in all respects to sit in the case. It does not appear that the defendant took exceptions to any member of the jury nor to the jury as a whole. An acceptance of the jury was a waiver of all exceptions thereto, unless it might be as to legal qualifications. *State v. Groome,* 10 Iowa, 308; *State v. Pickett,* 103 Iowa, 714.

II. Appellant presents several exceptions to rulings of the court in taking the evidence. To understand these, we will state briefly the theory of the prosecution, as indicated in the charge and in the evidence. It appears that, in the fall and early winter of 1897, these defendants were camped on one of the rivers of Warren county, some of them representing themselves to be engaged in the business of hunting and trapping wolves. The defendant and his wife, then passing by the name of Teller, were camped six or eight rods from the other defendants. About November 1st defendant McIntosh filed a claim with the auditor of Madison county for thirty dollars for six wolves killed in that county, the defendant Grosvenor and wife testifying thereto. On November 29th McIntosh made a further claim for twenty-five dollars on five wolves killed in Madison county. These claims were allowed and paid. At the time of their arrest a number of wolf hides, some with and some without the scalps, were found in the defend-

ant's camp and in the camp of the other parties. There was evidence tending to show that many of these hides were from a species of wolf known as "coyotes," that are not found in Iowa, but are common in Nebraska and west of the Missouri river. There was also testimony tending to show that many of these hides had been taken from the animal a long time prior to the time of the search. There was also testimony showing that similar claims had been made on the counties of Guthrie, Polk, Ringgold, Dallas, and Mills by McIntosh, and tending to show that the appellant participated in the making of some of these claims.

C. C. Stiles, auditor of Madison county, called by the state, having testified to the presentation of the claims against that county by McIntosh, that the hides had the appearance of old hides, and were not such as were ordinarily presented, but were smaller and darker in color, was asked on cross-examination as follows: "Had those wolves been killed in Madison county?" to which he answered, "I don't know, but I don't think they was." He further answered that what he meant was that he did not see them killed. On re-examination he was asked, "You may state whether or not, in your best judgment, they were killed in Madison county;" and, over, defendant's objection, was permitted to answer: "In my judgment, if they were, they were not killed at any recent date. I do not really believe they were killed in Madison county from the appearance of them." In view of the cross-examination, and the evidence as to the kind of wolves from which the hides and scalps presented had been taken, and that they were in part, at least, from a species of wolf not found in Madison county, nor in the state of Iowa, we think there was no error in the ruling.

Appellant next complains that Exhibits 1, 2, 3, and 4 were admitted in evidence. These are the two claims made

by McIntosh against Madison county, and the county warrants issued thereon. Whether this evidence was entitled to weight, as against appellant, depended upon whether the alleged conspiracy was established. It was clearly competent to be considered if the conspiracy was found, and it went to the jury properly guarded by instructions in this respect.

The county attorney asked a witness, "Did you ever see anybody that had seen them kill any wolves?" to which the witness answered, "No, sir." Appellant complains that his objection to this question was overruled. We think the ruling was error, but certainly no prejudice resulted to the defendant. Two witnesses were called as experts on wolf hides, and as to the kinds of wolves found in Iowa, and the kinds found in Nebraska and west of the Missouri river. Appellant complains of the admission of this testimony, as not tending to establish the alleged conspiracy. Taken in connection with the different kinds of wolf hides found in the camps of the defendants, this testimony was not only competent, but important.

The auditor of Guthrie county, having testified to seeing McIntosh and appellant at his office, was asked, "You may state whether or not either or both of them have ever filed any claims in your county before you, as auditor, claiming bounty on wolves killed in your county." This was objected to as incompetent, immaterial, and irrelevant, and the objection overruled. The witness answered, "They have, both of them." Appellant complains of this ruling, contending that the defendant had a lawful right to claim bounty on wolves killed in that county. Similar evidence was introduced as to McIntosh and Grosvenor making claims in Polk county, and McIntosh in Ringgold. This testimony was all competent, as tending to show the conspiracy charged.

Mr. Hall, auditor of Ringgold county, testified that McIntosh filed a claim against that county, August 14, 1897,

and that thereafter he received through the mail an order, signed by McIntosh, in a letter signed "James Teller," requesting the money to be sent to Council Bluffs, and later another letter, signed "James Teller," requesting the money to be sent to McCook, S. D. Appellant complains of the admission of this evidence, and insists that there is nothing to connect him with said letters. There is considerable evidence showing that appellant gave his name as James Teller on several occasions, and was known by that name.

A. Bond was permitted to testify, over appellant's objections, to a conversation between some of the defendants overheard by him when guarding them in the jail. Witness was unable to state which one made the statements to which he testified. He said, "I do not pretend to say that anything I heard that night was said by Jefferson." Appellant insists that, as these statements were made after the alleged conspiracy was ended, only the defendant making them was bound thereby, and that, as the statements were not made by appellant, they were incompetent as against him. It is evident that whatever was said in that conversation between the prisoners was in the presence and hearing of each other, and while it may be true that none of the statements testified to were spoken by this appellant, they were spoken in his hearing, and he did not repudiate the statement.

One Baker testified to picking up a book dropped from the bridge near the camp of the defendants, and appellant complains that his motion to withdraw this evidence was overruled. Nothing further appears concerning the book, nor to connect any of the defendants therewith, and the book, without further evidence, seems to have been entirely immaterial, but we fail to discern wherein the appellant could have been prejudiced by the ruling. What we have said fully disposes of other objections made by appellant to rulings on the testimony.

III.   Appellant's further complaint is that his motion for a verdict at the close of the evidence was overruled. It is insisted that there was not sufficient legal evidence to justify the conviction.   We will not set out or discuss it. It is sufficient to say that, after a careful reading of it, we reach the conclusion that the evidence fully sustains the verdict.— AFFIRMED.