STATE OF IOWA, Appellee, v. JOE MANNING, Appellant.

**Criminal law:** CONSPIRACY: EVIDENCE.   After establishing a *prima facie* case of conspiracy to procure the presence of women at a certain place for the purpose of prostitution, as in this case, a

letter written by accused's codefendant to one of the women as an inducement to her to come was admissible.

**Same.** The acts, declarations, and conduct of a coconspirator are 2 not admissible until a *prima facie* case of conspiracy has been made out; but the matter of such *prima facie* proof is largely in the discretion of the trial court.

**Conspiracy:** ACTS AND DECLARATIONS OF COCONSPIRATOR: INSTRUC-3 TIONS. Neither the nature nor the existence of a conspiracy can be established by the acts or declarations of one conspirator in the absence and without the knowledge and concurrence of the other; but in determining the guilt of defendants, the acts, declarations and conduct of both the alleged conspirators are admissible after the foundation has been laid. And where, as in this case, *prima facie* proof of the existence of a conspiracy has been established by other evidence, an instruction that in determining whether defendants conspired together as charged the jury might consider all that was said and done by them, and whether they acted in concert for a common purpose was proper; and in the absence of a request it was not necessary for the court to further instruct that the acts and conduct of the codefendant could not be considered as bearing upon the whole case unless they first found, from other testimony, *prima facie* evidence of the conspiracy.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

WEDNESDAY, NOVEMBER 16, 1910.

Defendant was indicted for criminal conspiracy. Upon trial to a jury, he was convicted, and from the judgment imposed appeals—*Affirmed.*

*Mills & Perry,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,* Assistant Attorney General, for the State.

DEEMER, C. J.—The defendant and one John Mitchell were jointly indicted for the crime of conspiracy by secur-

ing and procuring the presence of certain female persons in the city of Des Moines, Polk County, Iowa, for purposes of prostitution, adultery, and lewdness, and with the intent to cause the said females to become prostitutes and to commit adultery, fornication, concubinage, the said females being Bertha Lindell and Carrie Sprague, and did wilfully, unlawfully and feloniously conspire and confederate together to entice the said females aforesaid, they being heretofore reputed virtuous, to the city of Des Moines by false, fraudulent, and wrongful representations, for false and malicious purposes, to wit, prostitution, adultery, fornication, and lewdness, in the city of Des Moines, Polk County, Iowa. They were separately tried and each convicted. In this case it is contended (1) that the testimony is insufficient to support the verdict; (2) that the trial court erred in permitting testimony as to the acts and declarations of defendant's co-conspirator to go to the jury; (3) erred in permitting a letter and envelope to go to the jury; and (4) erred in giving one of its instructions.

I.   We shall first take up the rulings on testimony. One, if not both, of these rulings, involves, however, a third question, and that is the sufficiency of the testimony to show 1. CRIMINAL LAW: conspiracy: evidence. a conspiracy.   The letter and envelope in which it was inclosed, which the state was permitted to offer in testimony, was proved to have been written and addressed by John Mitchell to one of the girls referred to in the indictment, and the letter reads as follows:

Des Moines, Ia., Oct 20th, 1909.   Dear Wife I received your kind and loving letter and was glad to hear from you Kid the reason I did not send you the money I was waiting for an ans Kid you know I love you how could I disappoint you You will get in Des Moines at about 815 Joe and I will be there we will have on white sweaters and cap I thank you very much for the lock of hair I wish I had your picture Now tell your pal I said

hello and give this letter to her tell her Joe sent it Wright right back and let me know if you received the money order I am just dying to see your sweet face I am sorry I had you worried any time I say anything sweetheart you can bank on it that I mean it honey you can get anything from me that your heart desires for I love you baby and there isn't another girl that can take your place in my heart Kid I am writing this letter Wed. 20 and it will come over the N. W. R. R. you will get this Thu. evening Well Kid I don't know nothing else to say only that I hope to see your sweet face Sat. Goodby from your Dear Husban to his sweet little wife. P. S. excuse bad writing and mispelled words take all mistakes as kisses. S. W. A. K. . . .

This letter was postmarked at Des Moines October 20, 1909, addressed to Carrie Sprague at Jefferson, Iowa, and reached the latter place October 21, 1909. Its receipt by the addressee is shown, and it also fairly appears that it was one of the inducements which lead the girls to come to Des Moines. Defendant contends, however, that these items of evidence should not have been received, because it may not tend in any degree to establish a conspiracy. Conceding this to be true, it was undoubtedly admissible, provided a *prima facie* case of conspirarcy was made out, as showing the means used to induce the person or persons to whom it was addressed to come to Des Moines.

With the proper foundation laid, it was permissible to show the acts and conduct of each conspirator in furthering their contemplated ends and purposes. It is also contended that the trial court was in error 2. SAME. in permitting any testimony as to the acts, declarations, and conduct of Mitchell, because no proper foundation was laid for the introduction of such testimony. The rule is well understood that acts, declarations, and conduct of an alleged co-conspirator are not admissible in evidence until the state has made out a *prima facie* case of conspiracy, but we have also said: "The matter of

requiring *prima facie* proof of the conspiracy prior to such admission is a matter largely in the discretion of the court." *State v. Grant,* 86 Iowa, 216. We think the trial court was justified in holding that proper foundation was laid for the introduction of the testimony complained of.

II. The instruction complained of reads as follows:

(7) It is not incumbent upon the state to prove the alleged conspiracy by direct evidence. It may be established by circumstantial evidence, or by evidence both direct and circumstantial. In proving the agreement or conspiracy, it is not necessary to prove the language in which it was made nor the exact time in which it was made nor the exact place at which it was formed. A conspiracy may be shown, as stated above, by evidence more or less circumstantial in its character. It may be shown by what is done by each of the parties in furtherance of the common design if any such acts are done, or by what system or concert of action between them appears from their acts when viewed as a whole. *In determining whether or not the defendants John Mitchell and Joe Manning entered into a conspiracy between themselves as charged in the indictment, you will consider so far as shown by the evidence all that was said and done by the defendants, whether or not they acted in concert for the accomplishment of a common purpose, what that purpose was, if the same is shown, and from these facts and all facts and circumstances shown did enter into a contract or conspiracy between themselves to do the acts charged in the indictment.* The proof as to time and place will be sufficient if it establishes that said conspiracy was entered into in Polk County, Iowa, and within three years next preceding the 30th day of October, 1909.

That a conspiracy may be established by circumstantial evidence is fundamental. *State v. Sterling,* 34 Iowa, 443; *State v. McIntosh,* 109 Iowa, 209. But it is said that the italicized portion of the instruction quoted is erroneous for the reason that it permits the jury to find a conspiracy from the acts and conduct of Mitchell. It is true, of

course, that neither the nature nor the existence of a con-
spiracy can be established by the acts or
3. CONSPIRACY:
acts and dec-  declarations of one conspirator in the absence
larations of
co-conspirator:  and without the knowledge and concurrence
instructions.
of the other. *Wiggins v. Leonard,* 9 Iowa,
194; *State v. Weaver,* 57 Iowa, 730; *Chapman v. State*
(Tex. Cr. R.) 76 S. W. 477. The reason for this rule
is that to admit such acts or declarations would put every
man at the mercy of rogues, and render the innocent the
helpless victims of villanous schemers supported and proved
by the prearranged and manufactured evidence of the pro-
moters thereof. Notwithstanding this wholesome doctrine
of the law, it is nevertheless true that, in determining
whether or not the defendants were guilty of the crime
charged, the acts, declarations and conduct of both the
alleged conspirators are admissible in evidence, proper
foundation having been laid, and the instruction given is
absolutely correct.

Defendant's real contention here is, of course, that
the foundation could not be made out by the acts, declara-
tions or conduct of any person other than the defendant.
or of another made in his presence or with his knowledge
or concurrence. Defendant's counsel asked no instruction
upon this point; but the trial court ruled in accord with
defendant's contention many times during the trial. Its
error, if any, was in failing to instruct the jury in line
with its rulings on the admission of testimony. Ordinarily
it is the duty of defendant's counsel, even in a criminal
case, to ask such instructions as he thinks should be given
to cover the case as presented by the testimony. Neverthe-
less, it is the duty of the trial court in a criminal case
to so instruct as to fairly present the case in such a man-
ner as that the jury may not be misled or fail to under-
stand the real issues for their determination.

The trial court, before admitting the testimony as to
the acts, conduct, and declarations of Mitchell, correctly

found that there was *prima facie* evidence of a conspiracy and properly charged in the instruction quoted that in determining the question of defendant's guilt or innocence they might consider the acts and declarations of Mitchell. *Taylor Co. v. Standley,* 79 Iowa, 666; *Miller v. Dayton,* 57 Iowa, 423. This instruction was clearly correct. *State v. Lewis,* 96 Iowa, 286; *State v. McCahill,* 72 Iowa, 111; *State v. Mushrush,* 97 Iowa, 444.

Was it necessary, then, for the court, in the absence of a request from the defendant, to instruct that they could not consider the acts and conduct of Mitchell in its bearing upon the whole case, unless they first found from other testimony *prima facie* evidence of a combination or confedertion between Mitchell and defendant to do the acts charged? Upon this question it is inadvisable to lay down any general rule. Each case must depend upon its own peculiar facts and circumstances. Bearing upon this question, the Texas Court of Criminal Appeals said: "The reason for requiring proof of the existence of the conspiracy *aliunde* the acts and declarations of the co-conspirators made in the absence of appellant is to prevent the danger of the jury finding the conspiracy to exist from the acts and declarations alone. In those cases, therefore, where the existence of the conspiracy is not an issue, because it is merged in the crime and manifest from the parties being present and acting together in the commission of the crime (*Cox's Case,* 8 Tex. App. 303, 34 Am. Rep. 746), or where the proof *aliunde* establishing the conspiracy is so clear and conclusive as to negative the probability that the jury could have relied on such acts and declarations in finding a conspiracy, then their admission only serves to throw light on the conduct and motive of the parties acting together. If, therefore, in such cases, acts and declarations transpiring before the formation of the conspiracy are admitted, still, if they relate to and are in the furtherance of the identical purpose actually carried

out, their admission can seldom be otherwise than harmless."
*Blain v. State,* 33 Tex. Cr. App. 236 (26 S. W. 63).

In *U. S. v. Goldburg,* 7 Biss. 175 (Fed. Cas. No.
15,223), the court held: "The acts of the parties in the
particular case, the nature of those acts, their declarations
and statements, whether verbal or in writing, and the char-
acter of the transactions or series of transactions, with the
accompanying circumstances as the evidence may disclose
them, should be investigated and considered as sources from
which evidence may be derived of the existence or nonexist-
ence of the conspiracy." Again it was held in *Page v.*
*Parker,* 40 N. H. 47: "The conspiracy and common de-
sign must be shown, else the statements or declarations made
by one of them in the absence of the others, but for the
furtherance of that common design can not be given in
evidence against the others. Proof of the plot or combina-
tion must precede, accompany, or follow proof of declara-
tions made by either of the alleged conspirators to render
them competent against the others. It must be shown that
the conspiracy or combination was entered into before the
declarations were made, though the conduct, acts, and de-
clarations of the separate individuals in the planning or
execution of the joint scheme may be shown as evidence
of the common design." See, *also, State v. Crofford,* 133
Iowa, 478, which is quite in point.

Now the testimony in this case shows beyond contro-
versy that defendant and Mitchell were employed by an
amusement company in the year 1909; that they were in the
town of Jefferson together and together met the girls named
in the indictment; that, after the two men left Jefferson;
they each had correspondence with the girls in which they
proposed or suggested that the girls, who it seems were
"stage struck," come to Des Moines where they could be put
upon the stage and given support by the men. They came
to Des Moines, arriving there about eight o'clock at night,
and were met by this defendant and taken to a cheap show,

after which they were given money by each of the men, and told to go to a hotel and engage rooms. This was done, and later the two men met the two girls, and together or in couples they walked the streets of the city until suspicioned by the police and arrested about eleven or twelve o'clock p. m. That there was concerted action between the two men from the very beginning is so clearly and unmistakably established as to be beyond the pale of dispute. What each did was so intimately connected with the conduct of the other as in itself to establish the confederation or corroboration required. The men met the two girls together at Jefferson. They sent them money with which to come to Des Moines. They took them both to a theater or moving picture show, furnished them money with which to secure rooms for the night at a hotel, and, after the girls had registered under assumed names, they took the girls, near, eleven o'clock at night, into an unfrequented part of the city, and, when unobserved by the police, each man walked with one of the girls with his arm around her. They instructed the girls that whenever policemen were in sight they, the men and the girls, should separate, which they did. This conduct was such as to arrest the attention of the police officers, and they were all arrested about midnight. The girls or at least one of them understood when they came to Des Moines that they should live with the defendants, and a jury was warranted in finding that it was the intention of defendants to lead them into lives of lewdness and prostitution. It also appears that one of the men was married, which fact was known to both, and a jury may have found that the object of the conspiracy was adultery. This recitation of the testimony is from the standpoint of the prosecution for the reason that defendant's counsel insist that it does not establish even a *prima facie* case of conspiracy, to say nothing of its being sufficient to justify the verdict returned. We believe it is sufficient to do both, and that, in view of

this record, there was no error in the instructions given by the trial court or in its failure to instruct upon the matter to which we have already referred. Upon the proposition that the instruction complained of was erroneous, *State v. McCahill, supra,* is quite conclusive.

No prejudicial error appears, and the judgment must be, and it is, *affirmed.*