PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* JUAN J. GERARDINO and SIXTO LUCCIONI, Defendants and Appellants.

No. 2750.   Argued January 24, 1927.—Decided July 20, 1927.

*Felipe Colón Díaz, Ángel Fiol Negrón, José R. Gelpí* and *José Tous Soto* for the appellants. *José E. Figueras* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Defendants Juan J. Gerardino and Sixto Luccioni were convicted of the crime of conspiracy in the municipal court of Ponce. They appealed to the district court which, in a trial *de novo,* found them guilty and sentenced the former to six months in jail and $500 fine and the latter to pay a fine of $100.

The defendants have taken this second appeal and assign

in their brief the commission of 21 errors which we shall consider in the course of this opinion.

The defendants complain that the Government was represented at the trial by attorneys Romaní and Samalea, the former the prosecuting attorney for the district of Mayagüez and the latter a special prosecuting attorney, and not by the prosecuting attorney of the district of Ponce, Agustín E. Font, without showing any cause why Font should not act as prosecuting attorney in the case. This question was recently decided adversely to the defendants in *People v. Pabón*, 36 P.R.R. 87, in which this court said:

"When the defendant was arraigned he pleaded not guilty, without raising the question referred to in this assignment. He did not raise that question until the case was called for trial, and then it was too late. The case of *People* v. *Aponte*, 9 P.R.R. 345, not only decides this point technically, but goes into the merits thereof as follows:

" 'It becomes evident that the Attorney General not only has the same powers as the *fiscal* of any district, but that he may delegate that power to any special agent, for he alone is the judge of the necessity for appointing special counsel.'

"*       *       *       *       *       *       *

" 'The Attorney General must necessarily have the power to be represented by other persons, unless there is some absolute exclusion in the law, which we do not find.'

"See also the cases of *People* v. *Rivera*, 9 P.R.R. 455; *People* v. *Meléndez*, 9 P.R.R. 494, and *People* v. *Paris*, 25 P.R.R. 103."

The defendants moved for a dismissal of the prosecution because 321 days had elapsed from March 12, 1924, when the record of the appeal was filed in the district court, to February 26, 1925, the date of the trial. The prosecution opposed the motion and introduced evidence tending to show that there was good cause justifying the failure to hold a trial notwithstanding the time elapsed. The evidence consisted in the testimony of Emeterio Gotay, Clerk of the District Court of Ponce. He testified that the case had been set for October 15, 1924, but had been continued on motion of the defendants.

Regarding the motions filed in this connection the witness said in part:

"Q.—How many defendants are there? A.—Two. Q.—What is that? A. This is another motion originally presented in this court by attorney Tous Soto. Q.—How does he sign? A.—Attorney for the defendants. Q.—And what does Tous Soto do as attorney for the defendants? A.—In this motion be asks the court to continue the trial to another date. Q.—And what did Tous Soto agree to in that letter (*sic*) in representation of the defendants? Defense.—I object because that appears from the motion itself. Judge.—You may answer. A.—The defendants waive every right in their favor. Q.—What other right do they waive there? A.— There is no other waiver in that motion. Q.—Is there any other motion in the case? A.—There is another motion originally filed in this court by attorney José Rosario Gelpí in behalf of the defendants asking for a continuance of the case to a new term, the hearing set for the previous term, the October and November term. Q.—In whose name did he appear? A.—Attorney José Rosario Gelpí appeared for the defendants. Q.—And what did he agree to? A.—He waived a speedy trial and every right in his favor so that the case might be continued."

The clerk mentions also the amount of work in criminal and civil matters which engaged the constant attention of the court during the terms subsequent to the date of the granting of the continuance by the court.

Owing, no doubt, to the amount of work weighing heavily on the court and to the fact that this might have caused the court to deny the continuance, the defendants did not limit themselves simply to asking for a continuance, but offered to waive "a speedy trial and every right that might favor them . . ." in order to secure the continuance. This could not be construed in the sense that the defendants might be held indefinitely without having a trial. See *People v. Cepeda,* 31 P.R.R. 465, but the waiver of the defendants referred at least to the 120 days after the first continuance and during that time they remained subject to have their case tried by the court at its convenience, since we have held

generally that while the excess of work in a court is not of itself sufficient to supersede the rights of a defendant, in this case it is important considered in connection with the waiver of the defendants and the reasons which the court had for continuing the case. If we consider as a whole all of the concurring circumstances we must come to the conclusion that the court below was justified in overruling the motion to dismiss the case.

Defendant Luccioni on his part alleges that the motion for a continuance of the trial was not made at his request and that he did not authorize anybody to make the motion. In spite of this contention the record shows that the motion for a continuance of the trial was drafted by attorney José Tous Soto in the plural number in the names of the defendants, and if defendant Luccioni did not give such authorization and thought himself prejudiced by that act, then it was that he should have objected and not raise the question for the first time on appeal.

It is alleged that the court erred in overruling the motion for a bill of particulars specifying in detail the acts committed by each defendant so as to be informed of the acts with which he was charged and be able to defend himself at the trial.

The information in its pertinent part reads as follows:

"The said Juan J. Gerardino and Sixto Luccioni, . . . unlawfully, wilfully, maliciously and fraudulently, acting together and in common agreement, conspired and combined to deceive and defraud The Manufacturers' Life Insurance Company, a foreign corporation authorized to do business in Porto Rico, and to that end the said Juan J. Gerardino and Sixto Luccioni insured one Julio F. Rivera for the sum of fifteen thousand dollars with the said Manufacturers' Life Insurance Company, informing it that the said Julio F. Rivera was enjoying good health and was a first class risk, the said defendants knowing that the said Rivera, at the time of the insurance, that is, about the month of May, 1923, was suffering from tuberculosis of the lungs, and by means of that deception wilfully and maliciously induced the said company to insure the said Gerardino

(*sic*) for fifteen thousand dollars and issue a policy in favor of Julio F. Rivera, but the fraud was not consummated owing to the cancellation of the policy about the month of November, 1923. . .''

The information contains all of the elements constituting the crime of conspiracy. Two persons combined and conspired for the purpose of deceiving and defrauding The Manufacturers' Life Insurance Company by means of unlawful acts which are related therein. The acts with which the defendants are charged are alleged specifically and sufficiently inform the said defendants of their nature so that they may defend themselves. Those acts were not required to be minutely detailed in the information. In an indictment for conspiracy to defraud the purpose of the accused may be alleged in general terms without going into such particulars as are required in charging the offense of defrauding. 5 R. C.L. 1083. It is necessary, however, that the indictment show clearly that the purpose of the conspiracy was to accomplish an object which was in fact a fraudulent one (5 R.C.L. 1083), and this appears clearly from the information in the case at bar.

Moreover, the motion for a bill of particulars is addressed to the discretion of the court and there is nothing to show an abuse of discretion on the part of the court in overruling that motion.

While testifying Eliseo Font y Guillot was shown an application of the insured Julio F. Rivera to the insurance company for a life policy for $15,000. He was asked by the prosecuting attorney whether the insurance applied for was of first class and an ordinary life policy. The appellants objected on the ground that the best proof was the document itself. The purpose of the prosecution, however, was to establish the identity of the document, as the witness was the general agent of the insurance company in Porto Rico and all applications made in connection with the insurance business of the company in Porto Rico were referred to him.

The interrogatory was extended to the premium paid for the policy and then he undertook to explain that the discharge appearing on the policy meant that the premium had been refunded to beneficiaries Juan J. Gerardino and Sixto Luccioni because the insured was in poor health at the time of his application for the insurance. The objection of the defendants was that the witness was construing the scope of the documents, which was the province of the court. In reality the only thing that the witness did was to explain to the court his intervention in the discharge which was signed in his presence by both defendants. Moreover, the documents were introduced in evidence and the court had an opportunity to estimate their value from their examination and not from the testimony of the witness.

Another incident complained of by the appellants is that the witness was allowed to testify in regard to the signature of Julio F. Rivera which appears on the aforesaid application, without having seen him sign or being familiar with his signature. However, the witness testified that he was not familiar with the signature of Rivera at the time of the making of the application, but that later he had received from him several signatures. Besides, the application was signed by the defendants as beneficiaries under the policy and it was they who in such capacity signed its cancellation, the policy having been issued by virtue of the said application. Therefore the error assigned was not committed.

The witness was asked also about the necessary requisites for obtaining a first-class insurance. This was objected to because the expert qualification of the witness had not been established previously. The witness answered that in order to obtain first-class life insurance all applicants must be in perfect health without any clinic record, that is, never to have suffered from illness. It was very obvious, however, that the witness could answer without the previous preparation required as regards his expert qualification in the matter,

for apart from his being a doctor, he was the general agent of the company in the Island and in that capacity was familiar with the requirements of the insurance companies and in a position to explain what was understood by first-class insurance.

During the testimony of William E. Young several incidents took place which are alleged to be so many errors committed by the court.

It is alleged as error that the witness was allowed to testify through an interpreter when he knew the Spanish language. The witness began his testimony by saying that he spoke Spanish although "very little." The judge then allowed the examination of the witness through an interpreter. Undoubtedly the court was in a position to judge from the first statements of the witness in Spanish, from his knowledge of that language which he plainly showed, that he could not be subjected to a wide and painstaking examination in Spanish, and the court would be a better judge on that point. The question of course went to the discretion of the court, and unless an abuse of discretion is shown, which is not the case, its action on this point must be sustained.

"Under the Code, when a witness does not understand and speak the English language, an interpreter must be sworn to interpret for him. The propriety of calling an interpreter is a question addressed to the judicial determination of the trial court, as is the matter of the fitness of the person called to act, and the action of the court will not be disturbed upon appeal unless the record shows an abuse of discretion." 8 Cal. Jur. 225.

Another objection was raised when the prosecution questioned the witness regarding the interest that beneficiaries Juan J. Gerardino and Sixto Luccioni might have in the policy. The objection was based on the idea that the point was one to be determined by the court and not by the witness. The appellants seem to overlook the nature of the charge brought against them in the information, establishing a case of conspiracy or combination of the defendants with

intent to defraud the insurance company by means of false statements. The question tended to establish a fact of unequivocal meaning and importance in the case and it was logical that as the witness was the manager of the Latin-American department of The Manufacturers' Life Insurance Co. which included Porto Rico and having had to do personally with the policy issued in the name of Julio F. Rivera, he could testify on a point which came within his personal knowledge. In his testimony the witness mentioned several conversations which he had had with defendant Juan J. Gerardino after the death of the insured. In one of those Gerardino showed to the witness a check for $3,000 which he had made out in favor of the insured Julio F. Rivera a few days after the issuance of the policy, endorsed by the latter and cashed on the same day. He tried to show by that the insurable interest which he had in the policy as a collateral for that loan. The witness said that he stated that the operation did not afford him such interest because the insured was not in a good state of health at the time of taking the insurance and that this was admitted by the defendant. This was the decisive fact in itself which he submitted to the consideration of the court. The supposed illness of the insured was the taint that colored the sinister and fraudulent intent of the defendants in their conspiracy or combination to defraud the insurance company. And it is not hearsay evidence which they allege as another reason in support of their objection. This is a case of the exception to the hearsay rule dealt with in sections 19 and 35 of the Law of Evidence. The interrogatory was pertinent and the action of the court was proper in overruling the objections of the appellants.

There was objection to witness Young's remaining in the courtroom and being called again as a witness. On motion by the prosecution the court held that the witness might remain with the prosecuting attorney because he might aid

him at any moment during the trial. It was within the discretion of the court to grant the motion of the prosecution.

"A court, when excluding witnesses, has power in its discretion to specially except one or more witnesses from the operation of the order, or to refuse to do so. For example, it may make an exception of any person who might be of aid to the prosecuting attorney in the matter of the marshaling of the proofs. Or it may except the sheriff or a police officer when he is a witness." 8 Cal. Jur. 225.

Witness Young was asked also by the prosecution whether he had received any other application for insurance on the life of Julio F. Rivera. The witness replied that he had received another subsequent to the one in the present case for $18,000, the beneficiary being a brother of the insured. An ordinary life policy was issued and canceled later, the discharge being signed by Rafael Rivera. It appeared besides that the premium for this policy was paid by defendant Juan J. Gerardino. He was asked also about the issuance of other policies with which Juan J. Gerardino had had something to do. The appellants objected on the ground that the other policies had no connection whatever with the defendants.

In connection therewith the following is said in vol. 12, p. 637, of Corpus Juris:

"Where the guilt of a party depends on the intent, purpose, or design with which an act is done, or on his guilty knowledge thereof, collateral facts in which he bore a principal part may be examined into for the purpose of establishing such guilty intent, design, purpose, or knowledge. It is sufficient that such collateral facts have some connection with each other as a part of the same plan or as induced by the same motive, and it is immaterial that they show the commission of other crimes. The evidence in a conspiracy is wider than perhaps in any other case. Taken by themselves, the acts of a conspiracy are rarely of an unequivocally guilty character, and they can only be properly estimated when connected with all the surrounding circumstances."

In the notes to the cases jurisprudence is cited which

seems to apply under the surrounding circumstances of this case and which in its pertinent part reads as follows:

"In a criminal prosecution for conspiracy to defraud the United States out of public lands, evidence tending to show acts of forgery of applications for the land is admissible, although conviction is not asked for the forgery, when such acts are so intimately connected with the other acts of the accused as to tend to show a common scheme to defraud. Hyde v. U. S., 35 App. (D.C.) 451 (certiorari granted 218 U. S. 681 mem, 31 SCt 228 mem, 54 L. ed. 1207 mem.)

"To prove a conspiracy to commit a particular fraud it may be shown that the same conspirators perpetrated similar frauds on third persons about the same time or in the execution of the same plan. Luckey v. Roberts, 25 Conn. 486; Gardner v. Preston, 2 Day (Conn.) 205, 2 AmD 91; Card v. State, 109 Ind. 415, 9 NE 591; State v. Soper, 118 Iowa 1, 91 NW 774; State v. McIntosh, 109 Iowa 209, 80 NW 349; Com. v. Eastman, 1 Cush. (Mass.) 189, 48 AmD 596; Peo. v. Peckens, 153 N.Y. 576, 47 NE 883; Brackett v. Griswold, 14 NYSt 449 (rev on other grounds 112 N.Y. 454, 20 NE 376); Peo. v. Bleeker, 2 Wheel. Cr. (N.Y.) 256; In re Hitchcock, 6 City Hall Rec. (N.Y.) 43; Com. v. Pugliese, 44 Pa. Super, 361; Com. v. Spencer, 6 Pa. Super. 256; Rex v. Roberts, 1 Camp. 399. Where a conspiracy to defraud a county by rendering false bills was charged, it was held admissible to introduce other false bills, rendered pursuant to other conspiracies, where they tended to prove the conspiracy charged. McDonald v. Peo., 126 Ill. 150, 18 NE 817, 9 AmSR 547."

Witnesses Nereo Pierazzi and Josefina Pierazzi, father and daughter, testified concerning the physical appearance of Julio F. Rivera, saying that he was the type of a victim of tuberculosis. Rivera was a tenant of Nereo Pierazzi and lived near him. Josefina used to visit him and could notice the progressive physical signs which certainly showed the illness from which Rivera was suffering. She spoke of his pale and thin appearance and of his drooped shoulders. Nereo Pierazzi saw Rivera very rarely but sufficiently to keep impressed on his mind the ill appearance of Rivera. He testified that he had witnessed the death of a partner, a nephew and two tenants from the same disease. He became

alarmed and requested the sureties to have Rivera moved from the house because of the fear caused by tuberculosis. The contention of the appellants in objecting to that testimony was on the ground that it was necessary to show the expert qualifications of the witnesses to make such statements.

In the days of Hipócrates pulmonary tuberculosis was being studied and it was described in his work. Its spread in the human race has been such for want of specific remedies that the physical symptoms of the disease are familiar to laymen. This does not indicate that the knowledge based on experience is an expert guide for the trial judge, but it is a circumstance to be considered by the court in connection with the other elements of proof.

Another assignment is that the trial court erred in weighing the evidence.

The evidence for the prosecution tended to show that Julio F. Rivera made application on May 2, 1923, to The Manufacturers' Life Insurance Company for an ordinary life insurance policy for $15,000. The application contained among other statements the following: "I hereby declare and agree that I am at present enjoying perfect health in general." The document showed as beneficiaries Juan J. Gerardino for $9,000 and Sixto Luccioni for $6,000, and they signed it, preceding their signatures with the following words: "I ratify the foregoing answers, statements or agreements." The application went through and the insurance company issued on May 18, 1923, policy No. 286206, the annual premium therefor to the amount of $475.50 being paid by Juan J. Gerardino by check.

The policy, however, was canceled on November 12, 1923, the insured having already died at that time, by means of a discharge appearing on the back of it and reading as follows:

"Ponce, P. R., November 12, 1923.—We the undersigned do

hereby release from all liability The Manufacturers' Life Insurance Company under Policy No. 286206 which we deliver canceled at this moment, issued by the aforesaid company on May 18, 1923, on the life of Julio F. Rivera, deceased, in consideration of the refund by the aforesaid company of $475.50 which sum represents the amount of the premium paid to the aforesaid company on the policy in question. We make this transaction owing to the fact that Julio F. Rivera was not in a good state of health when he applied to the aforesaid company for an insurance policy, and that the said company would be justified in refusing payment of the amount of the insurance policy in question.

"I receive three-fifths of the premium amounting to $285.30.
(Signed)       J. J. Gerardino,
Beneficiary.

(Signed)       Eliseo Font Jr.,
Witness.

"I receive two-fifths of the premium amounting to $190.20.
(Signed)       Sixto Luccioni,
Beneficiary.

(Signed)       Eliseo Font Jr.,
Witness.''

Besides this release whereby the defendants admit the falsity of their statements in the application for an insurance as to the perfect health of the insured at the time of making the application, defendant Juan J. Gerardino admitted in several conversations with the manager of the company, William E. Young, that Julio F. Rivera was ill on May 2, 1923, and that he was suffering from pulmonary tuberculosis. Referring to other policies which were included in the general conspiracy to defraud the insurance company the witness, on being shown by the prosecution another policy for $18,000 on the life of Rivera, said:

"A.—The document is a declaration of beneficiary in an insurance policy, policy number 289935, on the life of Julio F. Rivera. Q.—Who is the beneficiary in that document? A.—The brother Rafael Rivera, of Ponce, Porto Rico. . . A.—The brother of the person who signed the document. District Attorney.—In your conversations with Gerardino, what did the defendant Gerardino say to you in connection with this policy for $18,000? A.—He included

this policy with the others which he had secured unlawfully on the life of certain persons. Q.—And what did he say in connection with this one? A.—That he would get the discharge of the policy from the person with authority to discharge it. . . Q.—What other policies did defendant Gerardino admit that he was interested in and in respect to which he said that the insured parties were suffering from tuberculosis at the time the policies had been issued?. . . Q.—And in which he was interested? A.—There had been two policies on the life of one Arcadio Robles. . . A.—To my best recollection one was for $17,000 and the other for $1,000. . . A.—Gerardino told me that as to the policy for $17,000 on the life of Arcadio Robles he and other persons would receive the full payment of the policy in case Arcadio Robles died. District Attorney.—Who said that? Who would receive the payment? A.—That he, Juan J. Gerardino and other persons, Enrique Valedón Maldonado, would receive payment for the whole amount of the policy should Arcadio Robles die. There were two policies on the life of Armando Minucci amounting to forty thousand dollars and another for fifteen thousand dollars. In regard to this case Gerardino told me that he and the brother of Armando Minucci had jointly secured forty thousand dollars of insurance with the Sun Life Insurance Company to be divided between Juan J. Gerardino and Armando Minucci, but that he, Juan J. Gerardino, had only secured the forty thousand on the life of Armando Minucci with the Manufacturers' Life Insurance Company. I requested Gerardino to explain to me an application for an insurance for ten thousand additional dollars on the life of Armando Minucci dated during those days or not later than ten days from the date of our conversation and he admitted to me. . . Q.—Who admitted? A.—Juan J. Gerardino admitted to me that that policy for ten thousand dollars, together with a third one for forty thousand dollars which had been requested from the Jefferson Standard Life Insurance Company was in his exclusive favor on the life of Armando Minucci; I requested him to explain to me that application for a ten thousand dollar insurance because I had visited and seen Armando Minucci sick in bed and asked him why they were intent on insuring him, and Gerardino admitted to me that the whole transaction for securing one hundred and thirty thousand dollars of insurance on the life of that unfortunate young man was fraudulent and was a conspiracy in which he had taken part with his brother, that is, the brother of Armando Domeneche by the name of Buenaventura Domeneche and was framed for the purpose of defrauding the life insurance company; he informed me

that he would call Armando Domeneche to Ponce and that if we did not inform the Attorney General he would see to it that all those policies were canceled and delivered to the company; he asked me not to tell Armando Domeneche that his life had been insured for such a big sum of money because they had obtained the consent of Armando Domeneche by means of tricks and deceptions. I consulted with our attorney, Poventud, and he advised me. . .''

All those policies just mentioned plainly show the vast conspiracy to defraud the insurance company.

There exist, moreover, independent proofs from the admissions of Gerardino to show that Julio F. Rivera was suffering from tuberculosis at the time of the application for the life insurance. Dr. Montalvo Guenard said that Julio F. Rivera clinically had all the appearance of a consumptive person. He did not state the exact date of the medical examination of Rivera, but said that it must have been about the middle of 1923. Although Dr. Oms mentioned that Rivera was suffering from broncho-pneumonia and that he died from that, however, he did not deny or affirm that he might be suffering from pulmonary tuberculosis. One may notice the evasive tendency of those statements from the absence of categorical conclusions, all of which shows the extraordinary efforts made with the intention of hiding the falsity of the essential fact on which the conspirators relied, and the deceitful and fraudulent purpose of making Rivera appear as enjoying perfect health when in reality he was indeed an invalid. The testimony of witness Pierazzi already mentioned refers to facts which had been noted in the month of April or May, 1923, that is, shortly before the application made by the insured and the beneficiaries. Consequently there does not appear any insurable interest in the ordinary life policy of Julio F. Rivera for $15,000 in favor of the defendants. Although Gerardino attempted to show that he had lent $3,000 to Rivera and the policy was collateral security, the very release of the policy is proof that it had been done to cover appearances as part of the plot hatched by the defend-

ants to catch in their snare and defraud the insurance company.

The evidence for the defendants tended to show that Julio F. Rivera at the time of the insurance was enjoying perfect health and that by virtue of a loan of $3,000 made to him by Gerardino the latter became his beneficiary in order to secure the loan. The conflict between this evidence and that of the prosecution was adjusted by the trial judge against the defendants, and there is nothing to show, in our judgment, that there was error, or that he had been swayed by passion, prejudice or bias in his decision.

Defendant Luccioni now insists that he did not take part in the deceitful acts and lays all of the blame on his accomplice Gerardino whom he accused of being the sole culprit in the conspiracy. However, Luccioni voluntarily signed the application for the insurance where he certified to the good health of the insured and appeared as beneficiary to the amount of $6,000. From that moment he entered into the agreement or plot with the other defendant to conspire and defraud by certifying to a false and fraudulent matter when he referred to the perfect physical condition of the insured. Later he received his part of the premium for the discharge or cancellation of the policy and admitted that Julio F. Rivera was not in good health at the time of the application for the insurance.

The appellants also complain that the court abused its discretion in rendering judgment two months after the case had been tried. But the question is raised too late, as it is raised for the first time on appeal. *People* v. *Cardona,* 36 P.R.R. 556.

The last assignment is that the court erred in rendering judgment when it had not been shown beyond all doubt that the crime had been committed within the judicial district of Ponce.

The evidence as a whole shows that the acts occurred in

the city of Ponce where the insured and the beneficiaries resided. The jurisdiction was fully proved.

From the foregoing the judgment appealed from must be affirmed,