THE STATE OF IOWA v. ORRIS WOLF, LEAVITT WOLF, CHARLES ALLUM, Appellants.

Rape: INDICTMENT.  An indictment for rape which states that defendants willfully and feloniously assaulted the prosecutrix, and did willfully and feloniously ravish and carnally know her, includes the offenses of assault and battery and simple assault.

INCLUDED OFFENSES: *Instructions.*  Where an indictment for rape includes the offense of assault and battery and assault, and the evidence tends to show that the crime was committed by another, and that defendant did not lay hands on the prosecutrix, it is error to fail to instruct on the included offenses of assault and assault and battery.  (In this case, the lowest offense charged on was assault with intent to ravish and the conviction was for that offense.—Reporter.)

*Instructions.*  The failure to specifically define the crime of assault · to commit rape, and to state the acts necessary to constitute it, is not error, when the instruction given in connection with a full instruction defining rape, will indicate the force required to constitute the former crime.

·Conspiracy: AIDING AND ABETTING: *Rape.*  Where there is evidence in a prosecution for rape tending to show that the defendant and another conspired to commit the crime, and that defendants were present and aided and abetted in the crime, an instruction that if there was a conspiracy, and defendants participated therein, and ·were present and took part in carrying it out, they would be as guilty as the man who accomplished the joint object, is erroneous, because it conveys the impression that it is intended to define the consequences resulting alone from the conspiracy, and then apparently blends it with the results flowing from aiding and abetting a crime.  One who aids and abets a crime is not equally guilty with the principal, though one who conspires with the principal to do what the principal does, may be.

SAME.  Where defendants are alleged to have aided and abetted in the commission of rape, an instruction which states that

the jury must find that defendants were actually present or
6 about the place of the commission of the offense, or so near
as to give countenance and support to the act complained of,
before they can be found guilty, is erroneous, since mere pres-
ence alone does not constitute aiding and abetting a crime.

Evidence of Good Character: EFFECT. Where evidence of the
general good character and reputation of defendants and of
their good reputation for chastity is introduced in a prosecu-
7 tion for rape, it is error to instruct that the jury may con-
sider such facts, if found to be facts, in determining whether
the witnesses for the state have been mistaken or have testi-
fied falsely, since such evidence should not be limited to the
purpose of discrediting the state's witnesses.

Joint Trial: CRIMINAL LAW: *Admissions of One Defendant.*
Where several defendants are jointly tried for rape, the admis-
3 sion in testimony of admissions of one of the defendants,
made after the commission of the crime, is not error, when
instructions are given that it can only be considered against
the defendant making the admissions.

SEVERANCE OF CHALLENGES. Code 1897, section 5364, provides that
peremptory challenges in criminal cases shall be exercised in
the same manner as authorized in the trial of civil cases.
1 Code, Civil Procedure, section 3678, provides that when there
are several parties plaintiff or defendant in a civil case, and
no separate trial is allowed, they shall not sever their chal-
lenges. *Held,* that defendants jointly tried for a felony are
not entitled to separate their peremptory challenges.

DRAWING TALESMEN. Where talesmen to complete a jury in a
2 criminal cases once are drawn from the talesmen's box, as re-
quired by statute, it is not error to call them as they enter the
court room, without re-depositing their names in the jury box
and drawing therefrom.

*Appeal from Poweshiek District Court.*—Hon. A. R.
Dewey, Judge.

Thursday, December 20, 1900.

The defendants were jointly indicted and tried for
rape. They were convicted of assault with intent to com-
mit rape, and from a judgment upon such conviction they
appeal.—*Reversed.*

*S. R. Clute* for appellants.

*Milton Remley,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

SHERWIN, J.—Section 4399 of the Code of 1873 provided that, "when several defendants are tried together, they are not allowed to sever their challenges, but must join therein." This express language was not carried into the Code of 1897, and in the trial of this case the court refused the defendants separate peremptory challenges. It will be conceded, we think, that, in the absence of statutory enactment changing the rule of the common law, each defendant tried jointly with others would be personally entitled to the full number of peremptory challenges fixed by law. Hence we must determine whether the Code of 1897 limits the number of challenges each of several defendants shall exercise. In this case, as in all cases where a felony is charged, each defendant was entitled to a separate trial as an absolute right. By exercising this right, he could avail himself of the full number of peremptory challenges provided by law. Failing to do this, he consents to have the trial proceed as if there were but one defendant. Section 5365 of the Code of 1897 fixes the number of peremptory challenges which the state and the defendant shall have in any given case, and the next preceding section (5364) provides that "peremptory challenges shall be exercised in the same manner as is provided in the trial of civil actions." In the Code of Civil Procedure it is provided, in section 3686, that the challenges shall be alternately exercised. And section 3678 says, "Where there are several parties plaintiffs or defendants, and no separate trial is allowed, they shall not sever their challenges, but must join in them." Read together, we think these provisions of the Code of 1897 clearly indicate an intention on the part of the legislature to restrict the peremptory chal-

lenges in joint criminal trials to the number which a single
defendant might exercise.

II.   Talesmen were drawn for completing the jury,
and, as they entered the court room, were called, without
depositing their names in the jury box and drawing there-
from.   There was no error in thus proceeding.   The
names had been drawn from the talesmen box, as
required by the statute, and upon their appearance
it was proper to use them without a second drawing from the
regular panel box.

III.   The testimony of several witnesses was admitted,
over defendants' objections, showing admissions made by
the defendant Orris Wolf after the alleged rape was com-
mitted.   When objections were made to this testi-
mony, the state expressly stated that nothing was
claimed for it as against the defendants Leavitt
Wolf and Charles Allum; and the court positively in-
structed the jury, in its charge, that it could not be consid-
ered against those defendants.   The evidence was compe-
tent as to Orris Wolf, and the rights of his co-defendants
were sufficiently guarded

IV.   No evidence was offered by the state tending to
show that any complaint was made by the prosecutrix that
a rape had been committed on her, or explaining why it was
not made.   Instructions were asked on this subject by the
defendants, one of which, at least, announced a rule which
has long been recognized by all the courts as proper in this
class of cases.   It called the jury's attention to the fact that
a failure to make such complaint was a circumstance tend-
ing to discredit her story.   These were refused, and the
court, on its own motion, gave an instruction which was un-
doubtedly intended to cover the same ground, and which
did partially do so; but, taken as a whole, it may have been
construed by the jury as offering in itself an excuse for this
failure on the part of the prosecuting witness, instead of
giving in concise language the rules which were to guide

them in considering that question. While we do not approve the instruction, we would hesitate to reverse on that alone.

V. There was evidence before the jury which, it was claimed, tended to show a conspiracy on the part of these defendants, and others, to ravish the prosecutrix. There was also evidence which, it was claimed, showed they were present at the time of the transaction, aiding and abetting therein. Instruction 5 given by the court covered the question of conspiracy and aiding and abetting, and the jury was told that if they found a pre-arrangement to commit the crime, and also found that the defendants participated therein, and were present and took part in carrying it out, they would be equally as guilty as the man who actually accomplished their joint object. This instruction, when carefully read, conveys to the legal mind the impression that it was intended to define the consequences following a conspiracy, and also those which flow from aiding and abetting the commission of a crime. It is undoubtedly true that one who conspires with another to do an unlawful act is equally as guilty as he who actually does the act, but it is not always true that one who aids and abets another is equally as guilty as the principal. The guilt of the former must be determined alone from the part he took in the transaction. *State v. Smith,* 100 Iowa, 1; *State v. Lee,* 91 Iowa, 499. In the instruction under consideration, the rule as to conspiracy and that as to aiding and abetting are so blended in the language used that the jury might well have been misled as to the court's meaning, and the defendants thereby have suffered prejudice. We are led to this conclusion the more readily for the reason that the next instruction given related to conspiracy alone, and was correct, indicating that the preceding instruction was intended to cover the question of aiding and abetting alone.

VI. The court did not specifically define the crime of assault with intent to commit rape, nor did it tell the jury in express terms what acts were necessary to constitute that crime. While we think it better to define distinct included offenses, we are of the opinion that the instruction given defining rape was so full that, taken in connection with the one given on the subject of assault with the intent, the jury would fairly understand the force necessary to constitute the latter crime.

VII. Instruction 9 is not open to the criticism made. It simply told the jury to consider the circumstances surrounding the transaction, and did not attempt to determine any fact issue in the case.

VIII. Instruction number 11 was as follows: "The identity of the defendants on trial is an important issue for you to determine (that is, their presence in or about the place of the commission of the offense at the time of its commission, if an offense was committed); and the state must have satisfied you from the evidence, and beyond a reasonable doubt, that these defendants on trial, or some of them, were actually present at or about the place of the commission of the offense, or so near as to give the acts complained of as perpetrated by Icenbice countenance and support, before you would be warranted in finding them guilty; and you should determine who were present and who were absent, or whether all were present or all absent."

This does not state the correct rule of law. It has never been held, so far as we are advised, that mere presence at the scene of crime constitutes aiding and abetting. Indeed, it is elementary that such is not the case. Nor is it sufficient, in addition thereto, that the person present mentally approves what is done. "The party to be charged must," in the language of Cockburn, C. J., "incite or procure or encourage the act." Bishop, Criminal Law, sections 628-633. The court in this instruction told the jury, in effect, that, if the defendants were near enough to give

Icenbice's acts countenance and support, they were guilty as principals. This doctrine would make a principal of every man whose curiosity tempted him to stop and look for a moment at any transaction involving a crime. The instruction cannot be sustained, and was prejudicial to the defendants.

IX. Defendants put in evidence their previous good general moral character, and also their character or reputation as to the trait involved in the charge against them. It has been the repeated holding of this and other courts that, while good character is not a complete defense to a criminal charge, it is a defensive circumstance which may be shown for the purpose of rebutting the presumption of guilt arising from circumstantial evidence (*State v. Turner,* 19 Iowa, 144), and that it should be considered by the jury, in connection with all the other evidence, in determining the guilt or innocence of the accused (*State v. Donovan,* 61 Iowa, 278). It may be considered as tending to show "that men of such character would not be likely to commit the crime charged." *State v. Ormiston,* 66 Iowa, 143. It should be considered "irrespective of whether the other evidence is conclusive or inconclusive, and it is for the jury to determine what weight such evidence shall have." *State v. Gustafson,* 50 Iowa, 194; *State v. Northrup,* 48 Iowa, 583; *State v. Clemons,* 51 Iowa, 274. In the instruction given on this subject the court told the jury that such evidence was permissible for the purpose of showing that the defendants would not be likely to commit the crime charged, and then said: "If you find from all the evidence, facts, and circumstances in the case that defendants were of good moral character, and were of good reputation for chastity in the community where they resided, before the alleged commission of the offense, then you have a right to consider such fact, if you find it to be a fact, in determining whether the witnesses who have testified to facts tending to criminate them have been mistaken, or have testi-

fied falsely or truthfully." This instruction cannot be approved upon any theory to which our attention has been directed, and clearly disregarded the rules laid down in the cases we have cited *supra*. The leading thought expressed therein is that evidence of character can be considered only as affecting the testimony of other witnesses. This is not its purpose, and it cannot be so limited.

X. The indictment charges that the defendants "willfully and feloniously assaulted the prosecutrix, and did willfully and feloniously ravish and carnally know her." This indictment included, by express terms, the minor offenses of assault and battery and simple assault. *State v. Vinsent,* 49 Iowa, 243; *State v. Kyne,* 86 Iowa, 616; *State v. Hutchinson,* 95 Iowa, 569. The evidence of the prosecutrix was that she was ravished while sitting in a single-seated buggy by the side of a man other than her assailant, and after a desperate struggle. The jury returned a verdict of assault with attempt to commit rape—the lowest offense upon which the court instructed. Neither of these defendants was shown to have laid violent hands upon the prosecutrix either before or at the time of the alleged sexual intercourse. Conviction was sought, as to them, on the ground of conspiracy, or as aiding and abetting the commission of the crime. Under this indictment and evidence before the court and jury, it was error to omit instructions on the lower offenses named. *State v. Vinsent, supra; State v. Walters,* 45 Iowa, 390. See, also, *State v. Clemons,* 51 Iowa, 278.

XI. This case is reversed for the errors pointed out, and, as we think the record justifies remanding it for a new trial as to all of the defendants, we do not discuss the evidence. Reversed and remanded for a new trial.—REVERSED.