STATE OF IOWA, Appellee, v. HARRY LEVICH, Appellant.

**CRIMINAL LAW:** Trial—Continuance—Discretion of Court. The 1  discretion of the trial court in denying a continuance will not be interfered with, in the absence of a showing that the action of the court has, in some way, deprived the accused of a fair trial. So *held* where there was no claim of absence of witnesses, sickness of anyone, or change of attorneys.

**CRIMINAL LAW:** Venue—Change of Venue—Inflammatory News- 2  paper Articles. The mere fact that inflammatory or prejudicial newspaper articles concerning defendant have been printed and circulated in a community containing a large population is not sufficient to show that the court abused its discretion in over-ruling a motion for a change of venue. It is important to show the effect of the articles on the public, and especially on the jurors who tried the case. This is especially true when the record shows that the defendant waived his last peremptory challenge and the jury was not allowed to separate during the trial.

**CRIMINAL LAW:** Trial—Excluding Witnesses—Codefendants. An 3  order excluding witnesses from the court room during the trial of a criminal case may include a codefendant not on trial.

**PROSTITUTION, HOUSE OF:** Trial—Instructions—Knowledge of 4  Accused. Requested instruction condemned, because authorizing an acquittal unless defendant knew that all the persons resorting to his house were guilty of acts of prostitution and lewdness therein.

**CRIMINAL LAW:** Trial—Instructions—Urging Agreement—Coer- 5  cion. An instruction, given to the jury after an unfruitful deliberation of 30 hours, urging the advisability of an agreement, but instructing that "the verdict must be the conclusions of each juror, and not the mere acquiescence in the conclusions of other jurors," cannot be questioned as *coercive* in the absence of an exception thereto; neither is there any occasion to further repeat that no juror should surrender his honest convictions.

**WITNESSES:** Cross-Examination—Impeachment—Repetition of 6  Questions. Questions on cross-examination, tending to show the

bad reputation of the witness, are properly ruled out as repetitions, when the former questions and answers had fully established bad reputation.

**PROSTITUTION, HOUSE OF:** Evidence—Discharge of Arrested In-
7  mates—Effect. The fact that a person was arrested at the house . in question and later discharged is entirely immaterial on the question as to the character of the house.

**CRIMINAL LAW:** Evidence—Best Evidence—Discharge. When the
8  ''discharge'' of an arrested person becomes material, the record of the court pertaining thereto is the best evidence.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY, Judge.

SATURDAY, MARCH 11, 1916.

THIS defendant, Levich, A. E. Philleo, and another, were jointly indicted for keeping a house of ill fame. Separate trials were granted. This appeal is from the conviction of Levich.—*Affirmed.*

*Parsons & Mills,* for appellant.

*George Cosson, Attorney General, John Fletcher, Assistant Attorney General,* and *George A. Wilson, County Attorney,* for appellee.

PRESTON, J.—1. Defendant was the keeper of a house of ill fame, as charged. The record is shocking. There is no doubt of his guilt. The sufficiency of the evidence is not challenged. Indeed, it could not be. There are 18 assignments of error, some of which are not argued. They relate to the overruling of motions for a continuance; a motion for change of venue; alleged error in the rulings of the court on the admissibility of testimony; alleged error in the instructions; and excluding a codefendant from the court room during the trial. The motions for continuance and for change of venue are argued together.

The motion for continuance was on the ground that de-

fendant would not have time to prepare for trial, and that the 'case was assigned for trial ahead of other cases wherein indictments had been returned before the indictment in this case. It seems there was some delay in the defendants' paying their attorneys their retainer fee. This defendant had employed the counsel who afterwards made his defense even before the indictment was returned, with the view of. defending against the charge which he knew was pending against him. It is no concern of the defendants that their case was assigned ahead of others, provided they had sufficient time to prepare for trial. The assignment of causes is under the control of the trial court, who is in a position to know the real situation. The indictment was returned by the grand jury on March 10, 1915. They entered their plea of not guilty on March 11th, and on that day, on motion of the county attorney, the case was assigned for trial March 18th. On March 18th, a motion for continuance was filed. While the motion was overruled, the trial was postponed until the morning of the 22d, and again until two o'clock P. M. of that date. There was no claim of the absence of witnesses or of sickness on the part of the defendant or his attorneys. There was no change of attorneys. The law is well settled in this kind of cases, and we see no reason in this case why the evidence for the defense might not be readily obtained. The parties are residents of the state. It is, of course, desirable, and the defendant has a right to reasonable time in which to prepare for trial. The statute provides that defendant shall, if he demands it, upon entering his plea, be entitled to three days in which to prepare for trial. Aside from this, there is no statutory provision that gives to a defendant any particular time in which to prepare for trial. The rule is that it is so much within the discretion of the trial court that its determination will not be disturbed unless it is clearly shown that there was an abuse of discretion. *State v. Baker*, 146 Iowa 612; *State v. Maher*, 74 Iowa 77. And there are many other

1. CRIMINAL LAW: trial: continuance: discretion of court.

cases to the same effect. Under the record, we are of opinion that no abuse of discretion has been shown.

2. As to the motion for change of venue, as soon as the jury was impaneled, the court ordered that the jury be kept together during the trial. When the impaneling of the jury was begun, the parties waived the taking down of the examination of the jurors as to their qualifications, so that we do not have any record as to whether the articles published in the newspapers made any impression upon those who served as jurors, or that they had even read any of the articles. The defendant waived his last peremptory challenge. The motion was supported by affidavits of the requisite number of freeholders, and of the defendants, who exhibited clippings from the newspapers. The dates upon which the articles were published are not all shown, but it is evident that they continued over some space of time. About 50 pages of the abstract are taken up with the motion for a change of venue and the exhibits attached. It is, of course, impracticable to set them out at any length within the proper limits of an opinion. Some of them purport to give the stories as told by two girls who came to Des Moines from Ottumwa, and were afterwards said to have been inmates of the house of ill fame kept by the defendant, and refer to the raid on the Walnut Hotel, which was the place kept by defendant, and to the arrest of defendant, and the character of the place and the girls who frequented it. There were also stories of attempts to influence the girls as to their being witnesses against defendant, and of the girls' retention in a home in Des Moines, pending the submission of the case to the grand jury. Some of the articles were not written in a serious vein. One is entitled:

"Our Movie Today. Characters: Jennie Zaring, Twenty, of Ottumwa, a Wanted Witness; W. E. Weaver, Police Sergeant, who kidnapped her and then foiled the villain; A. E. Philleo (for the purpose of this movie), First Villain; Harry

*Marginal note: 2. CRIMINAL LAW: venue: change of venue: inflammatory newspaper articles.*

Levich, Second Villain; Miss Ethel Fischer, Policewoman; Taxicab Drivers, and others.''

The article continues, ''Prolog.,'' and recites the fact that Levich was convicted in the police court of operating a disorderly house at the Walnut Hotel, and that charges of operating a house of ill fame were filed against the three defendants, who were afterwards indicted; that the Zaring girl is sought to corroborate the story of one of the other girls. Then follows: ''Act I; Scene, Ottumwa; Time, Monday;'' and refers to some of the officers' going to Ottumwa in an attempt to locate the Zaring girl. Then follows:

''Act II. Weaver arrives in Des Moines with the Zaring girl. But where is Policewoman Fischer and the Krull girl? Business of tense moments until next train, when the Policewoman arrives with her charge, and reports no activity on the part of the villains,'' etc.

Another article refers to the girls' being before the grand jury, and purports to state some of the things they are supposed to have said. Another article is, in part:

''Our Movie Today. The Perils of Jennie. Episode No. 2. Act I. Outside St. Monica's. 'It is near four o'clock. All night have guarded this place and not once has a stranger appeared. It is time relief should be coming for us. My hands are numb with cold.' The voice is that of Wilson Skinner, policeman assigned by the Great Chief Crawford to keep aliens from St. Monica's Home, where Jennie is under cover.''

Then follow Acts II, III and IV. Another has reference to the meeting of the grand jury, and another states that the police are involved in indictment of Levich and Philleo. Another relates to the filing of charges against defendants, and states that, if they are substantiated, they will send the defendants to the penitentiary. Another refers to the story told by one of the girls in an affidavit and before the grand jury—that it is a shocking story; and how she was induced

to take a room at the hotel by defendant and entertain men.; how he collected money from her for the men he sent her; and so on. Other similar clippings are set out.

The State filed a resistance to the motion, and attached affidavits of 10 or 11 residents, who state, in substance, that there is no prejudice among the inhabitants of the county against defendants that will prevent them from obtaining a fair trial in Polk County.

Some of the statements might be considered prejudicial, perhaps, if it were shown that the jurors had read them or knew of them and could remember the contents of the newspaper articles and believed them. It is doubtful whether jurors, had they read these articles, could remember any considerable part of the contents. The probability is that even counsel, having read them all carefully, could not now remember and relate from memory any considerable portion of them. There is little, if anything, inflammatory in any of the articles. It is not a case where witnesses were called in open court and examined and recited facts showing a situation where it might well be said that real prejudice existed in the minds of the inhabitants of the county, nor is it a case where the examination of jurors revealed a widespread feeling in the case. The large number of inhabitants of the county and city in which the trial took place is a matter proper to be taken into account, also. The statute in regard to applications for a change of venue in a criminal case provides that the matter is trusted to the sound discretion of the trial judge, and requires him to decide the question according to the very right of it. We have frequently said that we should not interfere with the ruling of the lower court on an application for a change of place of trial, except where a clear abuse of discretion is shown. This court is not in as good a position as the trial court to decide the question of whether prejudice existed, and we ought not to undertake to do so unless it clearly appears that such is the fact. As bearing upon this point, see *State*

v. *Hassan*, 149 Iowa 518; *State v. Crouch*, 130 Iowa 478; *State v. Icenbice*, 126 Iowa 16; *State v. Williams*, 115 Iowa 97; *State v. Miner*, 107 Iowa 656; *State v. Weems*, 96 Iowa 426.

In the *Weems* case, there were inflammatory articles published in the newspapers, and there was evidence that the lives of the defendants were threatened, and that the people were excited over the commission of the crime. Such a showing is not made in this case. We would not be justified in holding that the trial court erred in overruling the motion.

3. It is thought by the defense that the court erred in excluding from the court room one Philleo, who was jointly indicted with defendant Levich, although counsel concede in argument that this, of itself, would not be a sufficient ground to warrant a reversal. As stated, Levich alone was on trial, and Philleo was only a witness. At the commencement of the trial, upon motion of the State, the court made an order excluding all witnesses from the court room. At this time, the defendants requested that Philleo be permitted to remain, saying that he was one of the managers of the hotel. Afterwards, Philleo was called and examined as a witness, and was excused. Whereupon, the defendant, through Mr. Parsons, his counsel, stated that he desired to have him remain in the room, in order that he might consult him in reference to the examination of some of the other witnesses for the defendant; and the argument here is that Philleo was one of the managers of the hotel, who knew most of the facts about which the witnesses were to be examined, and was familiar with the location of the rooms and with the hotel generally. This is also true of the defendant Levich, who was also one of the managers of the hotel and was conducting it. This point is ruled by *State v. Weems*, 96 Iowa 426, at 440. In the instant case, if there had been any special point upon which it was necessary to consult Philleo, the court doubtless would have allowed him to be brought in for that purpose. But this was not asked:

3. CRIMINAL LAW: trial: excluding witnesses: codefendants.

The request was that he remain continuously in the court room.

4.  No exceptions were taken to the instructions given by the court.  The defendant requested an instruction as follows:

4. PROSTITUTION, HOUSE OF: trial: instructions: knowledge of accused.

"The mere fact that persons of lewd character may have stopped at the Walnut Hotel will not alone warrant you in convicting this defendant, unless you further find beyond a reasonable doubt that the defendant Levich knew such fact and knew that the persons resorting to said hotel were guilty of acts of prostitution and lewdness therein."

This was refused, and the refusal is assigned as error. The thought embodied in the instruction was covered by those given by the court, wherein the jury was told what was necessary to be proved by the State in order to warrant a conviction.  Aside from this, there is evidence in the record which, if believed by the jury, shows that the defendant was personally present and participated in many of the acts of prostitution and lewdness; that he frequently solicited men to come to the place for that purpose, and that he required the women to collect money from such men and divide it with the defendant; and that he personally was guilty of lewd acts and had sexual intercourse with some of the inmates of the place alleged to have been prostitutes.  Still further, we think the instruction asked would be misleading to the jury.  The instruction as asked would have authorized the jury to acquit unless the defendant knew that persons of lewd character may have stopped at the hotel and knew that all the persons resorting to said hotel were guilty of acts of prostitution and lewdness therein.  If it be conceded that, under the circumstances, the defendant would not be presumed to know the character of the people stopping at the hotel, still, as stated, there was abundant evidence that defendant did know of enough of the transactions when he was personally present

to justify a conviction, even though there may have been some such acts of which he did not know.

After the jury had been deliberating about 30 hours, they were brought into court, and, after the court had made the usual inquiries of the jury, were given what counsel call a "get together instruction." This instruction is substantially the same as that given by the trial court and approved by this court in *State v. Richardson*, 137 Iowa 591, and again approved in *Armstrong v. James*, 155 Iowa 562, 570, and *Caldwell v. Traveling Men's Assn.*, 156 Iowa 327, at 331. There may be one or two other cases wherein the instruction was criticized or condemned under other circumstances, but, as stated, there was no exception to this instruction. In connection with this instruction, the defendant requested two instructions on the same subject, in this form:

5. CRIMINAL LAW: trial: instructions: urging agreement: coercion.

"1. It is not meant by the additional instruction given that any juror should, merely because a majority may differ with him, surrender his honest convictions.

"2. It is not meant by the additional instruction given that any juror should vote to find the defendant guilty if he entertains an honest, reasonable doubt, nor that any juror who has no reasonable doubt of the defendant's guilt should vote to find the defendant not guilty."

There was no error in refusing these instructions. In the first place, there is no intimation in the instruction given that a juror should surrender his honest convictions merely because a majority may differ with him, or that a juror should vote to find the defendant guilty if he entertains an honest, reasonable doubt. On the contrary, the additional instruction complained of begins this way:

"The verdict in this case must be the conclusion of each juror, and not a mere acquiescence in the conclusion of other jurors."

In other instructions, the jury were plainly advised as to their duties.

5.   A number of errors are assigned based upon rulings
of the trial court in admitting evidence over

**6. WITNESSES:**
**cross-exami-**
**nation: im-**
**peachment:**
**repetition of**
**questions.**

objection and in excluding evidence.    No
authorities are cited as to any of them.    We
have examined them all, and as to some of
them, they are clearly without merit.    Celia
Crow, a girl 18 years of age, testified, on cross-examination.:

"Q.   Didn't you testify at the trial down there at the
police court of this city, shortly following or in the prosecu-
tion of this defendant, that you never had sexual intercourse
with anyone until you came there to that hotel?   A.   I testified
that Harry Levich ruined me in this way; that he made a com-
mon prostitute out of me; that is what I testified to.   Before
that, I had never been a prostitute.   Q.   But you don't mean
that you never had sexual connection with different people?"

This question was objected to by the State as repetition
and immaterial, and sustained.   The question objected to does
not limit the inquiry to a time prior to her going to the hotel.
We are at a loss to understand why the State should object to
this, unless it be on the ground that it was repetition.   This
girl was an inmate of the place kept by the defendant, and it
is proper to show the character of the inmates.   The contention
of appellant is, as we understand it, that they were entitled to
it, on the theory that it would affect the credibility of the
witness to show her character.   But this had been shown, and
the question was mere repetition.   She testified:

"Levich brought a lot of fellows there, about a dozen, I
guess.   Part of the money I got was given either to the house-
keeper or Levich, or both.   Philleo was in and out about the
place all the time."

And she testified to other acts of sexual connection.   So
that, had she been permitted to answer the question objected
to, it would have added nothing.   Counsel concedes in argu-
ment that:

"The record shows the character of this girl to have been

that of a common prostitute long before she ever came to Des Moines.''

Other evidence of this witness was objected to on re-examination but it was in regard to matters called out on cross-examination by the defendant.

Witness O'Donnell, a policeman, testified to being at this hotel, and that he saw a man in one of the rooms with all his clothes off but his underwear, and a woman who said she was not his wife; that he took them to the station. On cross-examination, counsel for defendant asked this:

7. PROSTITUTION, HOUSE OF: evidence: discharge of arrested inmates: effect.

''Q. They were discharged the next day?''

An objection by the State was sustained, on the ground that it was not the best evidence. Thereupon, counsel for defendant stated that they expected him to testify that he filed no charges against them and that they were discharged the next day, but this was not permitted. It occurs to us that there are a number of reasons why this offered evidence was not proper. The officer may have been derelict in his duty, although we do not say that he was. People might be in a hotel who did not go there for a lewd purpose. The fact that such a person was arrested and later discharged would not necessarily throw any light on the character of the place. Of course, if a record was made of that transaction at the police station, the record would be the best evidence.

8. CRIMINAL LAW: evidence: best evidence: discharge.

Questions asked of defendant's witnesses, Baugh and Laton, were objected to because calling for a conclusion of the witness, and because invading the province of the jury. Without setting out the questions, it is enough to say that we think the objections were properly sustained upon these grounds.

Enough has been said to indicate the general character of the rulings complained of, and we are of opinion that there was no error at this point.

Our conclusion is that the conviction ought to be sustained, and the judgment is—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.