STATE OF IOWA, Appellee, v. WILBERT MESSER, Appellant.

No. 40824.

OCTOBER 20, 1931.

REHEARING DENIED FEBRUARY 17, 1932.

John Fletcher, Attorney-general, Neill Garrett, Assistant Attorney-general, Clifford M. Vance, County Attorney, and J. V. Gray, Assistant County Attorney, for appellee.

F. S. Finley, for appellant.

DE GRAFF, J.—Zion Messer was the party assaulted by the defendant. At the time of the trial Zion Messer was 64 years of age. He operated a farm two miles north of Rome in Henry County, Iowa. On the morning of March 5, 1930, he was in a wheat field located at the southeast corner of a quarter owned by him. The defendant was on a piece of land owned by F. S. Finley which was west of the place where Zion Messer was at the time in question. The defendant was just over the fence and Zion was walking northwest to another tract of land owned by him which was directly north of the Finley land. Zion had an ax over his shoulder which he intended to use to cut logs on one of his farms. The assault occurred about 8:15 A. M. The defendant Wilbert Messer was walking south and when he reached a point about fifteen steps from Zion, the latter said to the defendant: "As bad as you hate to have school children go across your land, it don't look like you would be tramping over someone else's land." A further brief conversation was had between them at that time. It appears from Zion's testimony that the defendant was angry and excited and used harsh and profane words in talking to Zion who started toward the fence near which the defendant was standing. When Zion reached the fence he laid his ax on his own land near the fence and stooped over and raised his foot to go over the wire fence. He was then facing the defendant. At this point the defendant jerked an automatic revolver from his pocket, but as soon as Zion saw the gun he removed his foot from the fence and stood on his own land. At this point he picked up his ax and, as he claims, started to retreat, but as he was turning, the defendant shot at him five times. Three bullets entered his body. It is a significant fact that the bullets struck Zion from the rear, indicating that Zion had turned and was walking away from the fence, as he testified. At the time that one of these bullets struck Zion in the shoulder he said to the defendant: "My God, Web, are you going to kill me?" About this time the defendant again shot him in the back and Zion fell on his hands and knees and tried to escape, but when he had taken about forty steps from the fence he again fell down. The record discloses that after Zion was hit the third time, the defendant climbed over the fence and walked to a point near where the wounded Zion was lying. Whereupon Zion asked the defendant

if he would not help him home. The defendant did not respect the request but turned and went north towards his home. Zion did not see him again that day. Zion was taken to a hospital where he remained for several weeks. Two of the bullets are still in Zion's body. He testified that he did not threaten the defendant nor strike at him with the ax. The defendant concedes, as Zion testified, that when the shooting commenced there was a wire fence between them and that the defendant was about twenty steps distant from Zion. The defendant testified that he was afraid of Zion for the reason that he (the defendant) was a weak and a crippled man and that he shot in self-defense.

The primary propositions relied upon for reversal are (1) that the court erred in giving instruction No. 5 relative to the elements which the state must prove beyond a reasonable doubt before the defendant could be found guilty of the crime charged, and (2) that the trial court erred in sustaining objections to defendant's offer to introduce evidence as to what he thought of Zion's physical prowess.

We first turn to the instructions. The trial court on its own motion gave instruction No. 5 which in substance told the jury that before the defendant could be convicted of the crime charged in the indictment the state must prove beyond a reasonable doubt, first, that the defendant at or about the time alleged, in the County of Henry, State of Iowa, did assault the said Zion Messer as charged in the indictment; second, that said assault was made with the intent on the part of the defendant to murder the said Zion Messer; third, that the said act was not committed in self-defense. The said instruction No. 5 then stated that if the state has shown these alleged facts beyond a reasonable doubt that it would be its duty to convict the defendant of the crime charged; but if the state has failed to show these alleged facts beyond a reasonable doubt, then the defendant cannot be convicted of the crime charged in the indictment altho he may be convicted of the lesser or included crime of assault with intent to commit manslaughter or assault with intent to inflict great bodily injury, should the evidence so warrant.

Instruction No. 4 gave the jury a definition of murder and of assault to commit murder. Instruction No. 6 correctly de-

fined an assault. Instruction No. 12 gave to the jury a definition of the crime of assault with intent to commit manslaughter and in said instruction the court also defined the included offense of assault with intent to inflict great bodily injury. Instruction No. 14 has to do with the doctrine of self-defense and in the concluding paragraph of said instruction it is said: "Unless the state has shown beyond a reasonable doubt that the defendant was not acting in self-defense he cannot be convicted of the crime charged in the indictment or any of the included crimes and you should acquit the defendant."

It is elementary that instructions must be read and construed in their entirety. In the light of the instructions given, we conclude that the trial court properly instructed the jury as to the crime charged and also as to all included offenses and that the court did convey to the jury in plain and unambiguous language that the burden rested on the state to prove beyond a reasonable doubt that the defendant was not acting in self-defense, not only as to the crime charged, but also as to the included offenses in the crime charged. Furthermore, it may be said that no instruction given by the court except instruction 5 is set out by the appellant in his abstract. The instructions other than instruction 5 are found recited in the state's additional abstract of record. The appellant in his motion for a new trial or exceptions makes no complaint as to the correctness of any instruction given by the court except instruction 5, which, as pointed out, must be considered in the light of the instructions given relative to the included offenses. No exceptions to any instructions given by the court are found in the instant record, except as to instruction 5 to which reference has heretofore been made. The appellant is in no position to complain. The jury was most charitable in its analysis of the evidential facts and by its verdict was quite lenient with the defendant. As bearing on the definition of the included offenses involved herein, see State v. Bunn, 195 Iowa 9; State v. Dickson, 200 Iowa 17.

The second proposition relied upon for reversal is that the trial court erred in sustaining objections to defendant's offer to introduce evidence as to self-serving declarations as to what he thought of Zion's physical prowess. In other words, the defendant-appellant contends that the jury was entitled to

know all the facts in the mind of the defendant at the time of the affray bearing upon or indicating the vicious disposition of the prosecuting witness Zion. A reading of the record discloses that there was no occasion for the defendant to believe that he was about to be assaulted by Zion. The prosecuting witness Zion was in fact retreating from the fence line and the defendant plainly saw the action on the part of Zion. It was during this retreat movement that the defendant shot Zion.

When these parties first met on the day in question and the argument was had between them the defendant said: "God damn you, I wasn't on your land. If you will come down here I will lick the devil out of you." The defendant as a witness testified that he did not invite Zion to come over into the pasture where he was.

"I knew he was a stronger man than I was and that I was not able to contend with him in a fist fight or other physical combat. I never had a fight of any kind. I was trying to avoid a controversy with him. Q. If he had gotten over the fence and started a physical controversy with you,—a fight with you,—would you have been able to take care of yourself at all?" Upon an objection by the prosecuting attorney the court said: "Yes, I suppose whether he was able; he can tell what he knew. Q. Did you (defendant) think you would be able to equal him in a physical controversy that you might have with him? A. No, sir. Q. Did you know of his having had physical controversies before and have some idea of his strength and ability in the line of physical controversies? A. I never was there when they happened. I had heard of them. Q. Had he any considerable number of physical contests with other people that you knew about at that time?" An objection to this question was interposed as incompetent, irrelevant, and immaterial. The witness said "he had only heard of it." The Court: "It is what he knew or had reason to believe. Q. Did you have reason to believe from what you had heard that the prosecuting witness (Zion) was a man who was strong and able in physical contests and more than a physical match for you? A. Yes, sir." The prosecution then moved to strike out the answer to the question that was asked of the defendant for the reason "that it is for the jury to say whether he had reason to believe it." The trial court then said: "Yes, if he knew of his con-

dition, knew of the other man's condition, I don't think any mere apprehension would be sufficient." The prosecuting attorney then remarked: "He has already stated that." Thereupon the objection was sustained and an exception noted. The trial court further said: "He (defendant) can testify as to his own knowledge of those things; he has fully testified to .that."

It may be observed that the defendant was permitted to get into the record his fear and feeling toward the prosecuting witness Zion, but he was not permitted to invade the province of the jury and to argue his feeling in his testimony. The question to which objection was made had already been answered and in fact was in the record in a different form. In any event, the ruling of the court did not prejudice the defendant. We hold, therefore, that the propositions relied upon by appellant do not constitute reversible error. The judgment entered on the verdict of the jury is, therefore, affirmed.

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.