STATE OF IOWA, Plaintiff, Appellee, v. PAUL P. MOORE and J. W. LENKER, Defendants, Appellants.

No. 41607.

DECEMBER 12, 1933.

REHEARING DENIED APRIL 5, 1934.

J. C. France, H. J. Ferguson, and W. L. Harding, for appellants.

Edward L. O'Connor, Attorney-general, and Walter F. Maley, Assistant Attorney-general, William M. Dallas, County Attorney, Clifford B. Paul, and Donnelly, Lynch, Anderson & Lynch, for appellee.

KINDIG, J.—On October 27, 1931, the county attorney of Cedar county filed against the defendants-appellants, Paul P. Moore and J. W. Lenker, a county attorney's information charging that they, together with others, entered into a conspiracy on the 21st day of February, 1931. According to the county attorney's information, the defendants "did conspire and confederate together with themselves and with certain other persons, with the fraudulent and malicious intent to do illegal acts injurious to the public health, trade, morals, police and the administration of public justice, to-wit: To unlawfully prevent, hinder, and obstruct the authorized veterinarians of the Department of Agriculture of the State of Iowa, from conducting the tuberculin test on the dairy and breeding cattle owned by the defendant J. W. Lenker; and to aid and abet the said certain other persons to prevent, hinder and obstruct the said veterinarians

from conducting such tests for tuberculosis on their dairy and breeding cattle."

It is further charged in the information that "it was the intention and the design of the defendants, Paul P. Moore and J. W. Lenker and the said certain other persons, to effect the objects of the conspiracy by unlawfully assembling together in a violent and tumultuous manner, and when so assembled to unlawfully prevent, hinder, and obstruct the said veterinarians from conducting such test for tuberculosis on the dairy and breeding cattle owned by the defendant J. W. Lenker, and upon those owned by the said certain other persons, by unlawfully and violently assaulting, threatening and intimidating the said veterinarians, to the disturbance of others."

"And that in pursuance and consummation of the said conspiracy the defendants, Paul P. Moore and J. W. Lenker did on different occasions and unlawfully assemble together with certain other persons, in a violent and tumultuous manner, and when so assembled, unlawfully assault the said veterinarians, and did by force, violence and intimidation, prevent, hinder and obstruct the administration and conducting of the tuberculin test, on the dairy and breeding cattle owned by the defendants J. W. Lenker and upon those owned by certain other persons."

To that county attorney's information the defendants pleaded not guilty. Thereafter the defendants were tried on the information before a jury. The jury found the defendants guilty, and they were sentenced by the court accordingly. Wherefore the defendants appeal. On their appeal, they assign many alleged errors for reversal. These errors include the failure of the district court to grant a continuance, the failure of the district court to sustain their demurrer to the county attorney's information because it is bad for duplicity, the failure of the district court· to grant the defendants separate trials, the failure of the district court to sustain the motion for a directed verdict, the failure of the district court to permit the defendants to introduce into evidence certain exhibits to show certain litigation involved under the bovine tuberculosis statute, in order to prove that the defendants in their various activities legitimately sought to obtain relief from an alleged unconstitutional statute, the failure of the district court to sustain objections interposed by the defendants to certain evidence offered by the state, and the failure

of the district court to prevent the state's attorneys from asking certain alleged improper questions on cross-examination.

For convenience, we will consider these propositions in the following order. Under any order, because of the numerous and unrelated errors assigned, the discussion necessarily will appear more or less disjointed.

I. As before stated, the county attorney's information was filed against the defendants in October, 1931. Apparently the cause came on for hearing December 18, 1931, and the state then filed a motion for a change of venue. After considering the motion, the district court sustained it, and the cause was transferred from Cedar to Jones county.

In January, 1932, the cause came on for hearing in the Jones county district court, but the defendants desired a continuance, so they filed a motion therefor. This motion, generally speaking, was based upon two grounds. Such grounds were: First, that their attorney, J. C. France, was at that time engaged in the trial of an equity case in the Cedar county district court, and that the equity suit would not be completed until some time during the first week in February; and, second, that the defendants' attorney, Mr. France, had a case pending in the federal District Court in Davenport, and that this cause probably would require a month's time for trial. Because of these circumstances, the defendants asked that the cause pending against them on the county attorney's information in Cedar county be continued over the term.

Following its consideration of the motion, the district court made this order, on January 30, 1932:

"Counsel being unable to agree upon a future day when the case may be tried, and it appearing that defendants' counsel has been engaged in a trial of a case in Cedar County for several days and which will require several days further to conclude, the application for a continuance is sustained and the trial of this issue is postponed from Feb. 1, to the 16th day of Feb. 1932, at 9 o'clock A. M."

When the case came on for hearing at the adjourned date, the defendants appeared without their counsel, and orally asked that the cause be continued over the term. At this time the defendant Moore stated to the district court:

"We have been depending upon France to make the arrangements for us, up until the last month he was trying to arrange it so that he would not have to get out of the case, of course, depending upon him, we don't know what else to do and he was the only one that was in the case and understood it. Now, if there is any way that we can make an arrangement with these attorneys so that we can get a waiver or anything of that kind—I don't know—in your proceedings, or anything of that kind, we are willing to do whatever is humanly possible.

"The Court: Well, you can confer with the representatives of the State here.

"Mr. Dallas (representing the State) : I believe it was tentatively agreed last night that if the defendants would appear here today and enter their waiver to their rights to a separate trial in open court and ask for a continuance to the March term, that on condition of their express waiver we would consent to the continuance, the defendants to be tried jointly at the March term, but that is the only ground on which we feel we can consent to an arrangement of that kind. * * *

"The Court: Well, if it is tried this term, the jury are here waiting for this case, there is nothing else for the jury at this term of court that I am aware of, and it is up to you men to say whether you folks can agree, and if you can come to some understanding, it will be satisfactory to the court.

"Mr. Lenker (the defendant) : As far, Your Honor, Judge, as I am concerned, an arrangement of that kind, a waiver, would suit me, I have no objections to that that I know of, of course, we like very much to have our attorney that understands the case in the case; I presume in my estimation, it would take ten days or better before we could get a new attorney in the case, *anyway that is satisfactory,* and it seems to me if we can make an arrangement with the State or prosecution it would suit me all right. I would prefer a separate trial, but if we cannot do any better, we will have to do that.

"The Court: *We cannot compel you to agree to this.*" (Italics supplied.)

Whereupon both defendants agreed that, if a continuance were granted to the March term, they would waive their rights to separate trials. After the agreement, the county attorney and the de-

fendants entered into a written stipulation under which the cause was continued to the March term, and the defendants expressly waived their rights to separate trials. Accordingly, the district court continued the cause to the March term. We said in State v. Levich, 174 Iowa 688, on page 690, 156 N. W. 824, 825:

"The statute provides that defendant shall, if he demands it, upon entering his plea, be entitled to three days in which to prepare for trial. Aside from this, there is no statutory provision that gives to a defendant any particular time in which to prepare for trial. The rule is that it is so much within the discretion of the trial court that its determination will not be disturbed unless it is clearly shown that there was an abuse of discretion."

To the same effect see State v. Burch, 195 Iowa 427, 192 N. W. 287, 31 A. L. R. 198; State v. Twine, 211 Iowa 450, 233 N. W. 476; State v. Arnold, 12 Iowa 479; State v. Weems, 96 Iowa 426, 65 N. W. 387.

Under the facts in the case at bar, it is apparent that the district court continued the cause over the term as requested by the defendants. Although the continuance was not granted until the defendants reached an agreement with the attorneys for the state, yet a continuance was finally procured by the defendants. Before the defendants agreed to waive their rights to separate trials in order to obtain the continuance, the district court specifically advised them that they were not required so to do unless the plan met with their approval. Other continuances or postponements had been granted before the one in question. It cannot be said, therefore, that the district court abused its discretion.

II. A complaint is also made by the defendants because the district court did not sustain their demurrer to the county attorney's information on the ground of duplicity. The information is duplicitous, the defendants argue, because it charged the defendants with the "fraudulent and malicious intent to do illegal acts injurious to the: First, public health; second, trade; third, morals; fourth, police; and, fifth, the administration of public justice." Such an information, the defendants argue, is duplicitous because it charges several separate and distinct offenses. Obviously the information is not duplicitous.

In conspiracy, the gist of the offense is the unlawful agreement or combination. Section 13162 of the 1931 Code; State v. Terry,

207 Iowa 916, 223 N. W. 870; State v. Poder, 154 Iowa 686, 135 N. W. 421; State v. Paden, 199 Iowa 383, 202 Ñ. W. 105. So long, then, as the information charges a single conspiracy, there is no duplicity. The purpose, or object, of the conspiracy may be to do a multitude of unlawful acts. Those purposes may be charged in the information, so long as there is a single conspiracy. State v. Coyle et al., 7 Okl. Cr. 50, 122 P. 243, local citation 263; State v. Tonn, 195 Iowa 94, 191 N. W. 530; State v. Paden (199 Iowa 383, 202 N. W. 105), supra; State v. Madden, 170 Iowa 230, 148 N. W. 995; State v. Caine, 134 Iowa 147, 111 N. W. 443; State v. Loser, 132 Iowa 419, 104 N. W. 337; State v. Grant et al, 86 Iowa 216, 53 N. W. 120.

Although the information in the case at bar sets forth numerous purposes or objects of the conspiracy, yet the conspiracy itself, as charged in the information, is single, as distinguished from duplicitous.

III. When the cause finally came on for trial, the defendants, although they had expressly waived separate trials in the stipulation mentioned in Division I of the opinion, asked for separate trials. Because the district court denied the defendants the separate trials demanded, they now complain. As before indicated, the defendants consented to waive their rights to separate trials in order to induce the county attorney to agree to a continuance of the trial to the March term. This the defendants did because they preferred their attorney, Mr. France, to any other attorney they might hire. There is nothing in the record to indicate that the defendants could not have obtained other competent attorneys to defend them at the February term of court. On the other hand, it appears in the record that the defendants have procured other competent attorneys, in addition to, and for the purpose of assisting, Mr. France. A continuance sometimes may be denied a defendant, although an attorney of his choice will thereby be prevented from defending him, if in fact another competent attorney does appear for him and defend. State v. Burch, 195 Iowa 427, local citation 430, 192 N. W. 287.

Before the defendants waived their rights to separate trials in the case at bar, they were advised by the district court that they need not do so, as previously shown. Their action, therefore, in consenting to the waiver, was purely voluntary. Consequently it remains to be determined whether in any event the defendants, by written stipulation, entered into at the February term of court, could waive

their rights to such separate trials at the March term thereof. Nowhere in the statute is there anything indicating that the defendants could not thus waive their rights to the separate trials. For instance, there is no analogy, as claimed by the defendants, between section 13842 of the 1931 Code, providing for separate trials, and section 13803 of that Code, providing that a plea of guilty may be withdrawn at any time before judgment. Frequently in criminal cases a defendant waives his right to a separate trial. Other rights of the defendant in a criminal case also may be waived.

A defendant in a criminal case may bind himself at one term to be governed in the trial of a cause at the next term by a procedure different from that followed in the regular course of practice. To illustrate, in State v. Olds, 106 Iowa 110, 76 N. W. 644, at the defendant's request trial was continued on condition that the evidence of witnesses given at previous trials should be admissible against him. Therefore this court held that such evidence was admissible without formal proof of the agreement for its admission, because the court took judicial notice thereof. Due to such agreement, it was held that the right of the defendant in a criminal case to be confronted by witnesses against him was waived. There appears to be no reason why a defendant could not likewise waive his right to a separate trial. In State v. Wolf et al., 112 Iowa 458, on page 460, 84 N. W. 536, we said:

"In this case, as in all cases where a felony is charged, each defendant was entitled to a separate trial as an absolute right. By *exercising* this right, he could avail himself of the full number of peremptory challenges provided by law. *Failing to do this,* he consents to have the trial proceed as if there were but one defendant." (Italics supplied.)

By the phrase "failing to do this", the court referred back to the phrase in the previous sentence "by exercising this right"; that is to say, if the defendants in the case at bar exercised their rights to have separate trials, they, of course, could have such trials. But, if the defendants failed to exercise those rights, then they could not have such trials. When the defendants expressly waived their rights to separate trials, it cannot be said that they exercised the rights to have them, as contemplated by State v. Wolf et al. (112 Iowa 458, 84 N. W. 536), supra. Many courts have held that a defendant in a criminal case may waive his right to a separate trial. Towns v.

State, 149 Ga. 613, 101 S. E. 678. See, also, Nichols v. Territory, 3 Okl. 622, 41 P. 108; State v. Mason et al., 19 Wash. 94, 52 P. 525; State v. Madden, 90 Kan. 736, 136 P. 327. The Georgia Supreme Court said in the Towns case, supra:

"In the first special ground of the motion the plaintiff in error contends that he should have been tried separately. While such was his right under the law, he voluntarily waived it. Having done so, he is estopped from afterwards objecting. Otherwise a party may, by express voluntary waiver, induce the court to act, and, if the finding is adverse, then assign error and reverse the judgment. The plaintiff in error, having consented to be tried jointly with the other defendants, must be held to his act. The right to a separate trial may be waived by one accused of crime, though the offense be capital."

Because, then, the defendants in the case at bar waived their rights to separate trials, the district court did not err in denying them such separate trials.

IV. Next it is argued by the defendants that the evidence was not sufficient to convict them. They say there was no direct evidence, and that the acts and declarations of the individual conspirators were offered against them to prove the conspiracy itself. Concerning this, we said in State v. Manning, 149 Iowa 205, reading on pages 209 and 210, 128 N. W. 345, 347:

"It is true, of course, that neither the nature nor the existence of a conspiracy can be established by the acts or declarations of one conspirator in the absence and without the knowledge and concurrence of the other."

To the same effect see State v. Paden (199 Iowa 383, 202 N. W. 105), supra.

It is for the court to determine in each case whether there is a sufficient prima facie case of conspiracy to warrant the admission into the record of the acts and declarations of coconspirators. See State v. Terry (207 Iowa 916, 223 N. W. 870), supra; State v. Nash & Redout, 7 Iowa 346, and cases above cited. A conspiracy need not be proven by direct evidence, but can be established by circumstantial evidence as well. State v. Terry (207 Iowa 916, 223 N. W. 870), supra. During the trial, the court may determine the order in which such evidence shall be introduced. State v. Terry

(207 Iowa 916, 223 N. W. 870), supra; State v. Paden (199 Iowa 383, 202 N. W. 105), supra. If the state has shown a prima facie case of conspiracy, then the court, within certain limitations, may admit into the evidence certain acts and declarations of the conspirators; that is to say, if a prima facie case of conspiracy "is made out", evidence of the acts and declarations of the conspirators, although not made in the presence of each other, if in carrying out the common purpose, are admissible. State v. McGee, 81 Iowa 17, 46 N. W. 764; State v. Row, 81 Iowa 138, 46 N. W. 872; State v. Archibald, 204 Iowa 406, 215 N. W. 258; State v. Caine (134 Iowa 147, 111 N. W. 443), supra.

So, in the case at bar, when testing whether the state made a prima facie case to support the introduction into the evidence of the acts and declarations of the coconspirators, these rules must be kept in mind. Of course, it is impossible to set forth the entire record made by the state at this juncture. At most, we can give only a very brief outline thereof. Under the record presented, there is evidence to support the following facts:

After William Butterbrodt, E. C. Mitchell, G. C. Walton, and Anton Schroder, on Febuary 14, 1931, had been served with fifteen-day notices to test their cattle, as required by law, and the defendant Lenker, on February 18th, was served with a similar notice, a meeting was held at Tipton on February 21st. A large crowd assembled at the courthouse. The defendant Lenker was the presiding officer, and the defendant Moore made an impassioned speech to the crowd. In his speech, the defendant Moore said:

"Anybody that expected to get justice in the courts of the country was a jackass; that if they expected to get justice they would have to get it for themselves."

During the afternoon, the crowd again met in the auditorium of the Tipton High School. Lenker, the defendant, again acted as chairman, and the defendant Moore gave a report on what he designated "the action committee". It was recommended that a "Central Committee", consisting of four persons, be appointed. Moore, the defendant, suggested that the duty of this "Central Committee" was as follows: "The Central Committee will notify the rest of the people." After the "rest of the people" were thus notified by the central committee, according to Moore, they were "to gather then with pitch-forks and axes".

While this report was being given, both the defendants Moore and Lenker were on the platform. Both Moore and Lenker were made members of the committee. The defendant Lenker stated at the meeting that the committee "would proceed to appoint * * * different men for the telephone lines". This was for the purpose of enabling the committee to assemble, in brief time, large crowds of farmers to interfere with the vaccination of cattle by the state representatives. Following that organization, interferences were repeatedly made with state representatives when they attempted to test cattle for tuberculosis. When the crowds thus gathered, they assaulted the state representatives and county officers as well. During all of these proceedings, it is apparent from the evidence that the defendants Moore and Lenker were very active. As a result of the uprising, it was impossible for the state representatives to enforce the tuberculosis law. On each occasion, when the state representatives attempted to test the cattle in the neighborhood, the crowd that gathered heaped all sorts of violence and indignities upon them. These representatives were assaulted and struck by the crowd. Finally, the state representatives abandoned the project for several weeks and until the aroused community again quieted down.

When assembled, the crowd was violent and tumultuous. The assemblage was unlawful. It acted in a violent and tumultuous manner in order to intimidate the state and county officers. It is very apparent that the state first showed a prima facie case of conspiracy, and then followed that up with further supporting evidence of the conspiracy. Accordingly, the question of whether the defendants were guilty of conspiracy was properly submitted to the jury, unless the district court, in one instance, admitted statements of the defendant Lenker before the conspiracy with the defendant Moore and others is alleged to have been formed.

 V. A witness for the state was asked this question:

"Do you recall having a conversation with the defendant (Lenker) in February, 1931, with reference to your testing his cattle? A. Yes.

"Q. Tell the jury the substance of that talk. A. He came in and I asked him if he didn't before we served the fifteen day notice on him (notice that the cattle would be tested), if he wouldn't agree to test his cattle, and I told him because we didn't want to

have any trouble. He told me, that is all right just go ahead and serve it. That was about February 15."

In the county attorney's information the conspiracy is alleged to have been formed February 21, 1931. So the statement alleged to have been made by the defendant Lenker was made a few days before. When the question was objected to by the defendants, the attorney for the state, Mr. Lynch, said: "Before making your objection, this testimony as to the conversation, to which the witnesses' attention will be called, is offered as against the defendant Lenker." Manifestly, therefore, the defendant Moore has no basis for complaint. This testimony was admissible against the defendant Lenker in order to show his attitude of mind and whether, because thereof, he would likely enter into the conspiracy.

It is true that testimony of the acts and declarations of a conspirator made before the conspiracy commences, or after it terminates, is not admissible against the other conspirators. State v. Archibald (204 Iowa 406, 215 N. W. 258), supra. On the other hand, we said in State v. Martin et al., 199 Iowa 643, on page 647, 200 N. W. 213,

"But, though the burden is upon the state to prove that each defendant was guilty of participation in this alleged conspiracy, it is not required to confine itself to evidence admissible against both. The guilt of one and each one may be established by evidence legally admissible against him. Such has always been the purport of our holdings."

Therefore, in view of the fact that the state expressly declared that the evidence was introduced as against the defendant Lenker alone, there is no reversible error at this point. So, then, there is evidence in the record to sustain the charge of conspiracy, and the conviction founded thereon must stand, unless the district court improperly excluded the defendants' theory of the case at this point. See, also, State v. Manning (149 Iowa 205, 128 N. W. 345), supra.

VI. While the defendants were introducing their evidence, they offered to show that their activities above described were for the purpose of lawfully opposing the tuberculosis law. For instance, it is claimed that they were attempting to persuade the various farmers in the community to assist in prosecuting cases pending in the courts relating to the constitutionality of the law. Likewise, it is said that these defendants were acting in behalf of a proposed

bill in the Iowa legislature which would repeal or modify the bovine tuberculosis law. Also it is suggested that the defendants were supporting other lawful activities in relation to their attempt to overcome the bovine tuberculosis law. Consequently, certain exhibits were offered for the alleged purpose of showing the lawful motive of these defendants. These exhibits consisted of pleadings in the various cases, and other exhibits having to do with the alleged lawful objects claimed to have been indulged in by the defendants. No doubt it was proper for the defendants to show that they were not engaged in the unlawful actions claimed by the state; but that, on the other hand, they were engaged in the lawful purposes suggested by them.

But this does not necessarily mean that the exclusion of the exhibits was error demanding a reversal of the judgment of conviction because, by the oral testimony of witnesses, the defendants showed the facts relating to the alleged lawful purposes in which they were engaged. By making that showing in this way, the defendants had the full benefit of their alleged defense. State v. Dyer, 147 Iowa 217, 124 N. W. 629, 29 L. R. A. (N. S.) 459; State v. Walters, 178 Iowa 1108, 160 N. W. 821; State v. Messer, 213 Iowa 1264, 238 N. W. 462.

 VII. Nevertheless, the defendants argue that they are entitled to a reversal of the district court's judgment because that tribunal permitted the attorneys for the state to exceed the bounds of legitimacy in the cross-examination of the defendants' witnesses Eversman and Saint Vaughn. On cross-examination, these witnesses were asked in substance: "Aren't you under indictment in Jefferson county, Iowa, charged with impeding and obstructing the enforcement of this law (the bovine tuberculosis law) ?" Again: "You are now under indictment in Jefferson county charged with conspiracy to obstruct, hinder, and interfere with the enforcement of the tuberculosis test, and the administration of the test by the duly authorized agents of the department, are you not?"

In other words, the witnesses were charged with an offense similar to that with which the defendants are charged. Because the witnesses were thus charged with a similar offense, it was thought by the state that such fact might be shown in order to indicate the interest or bias of the witnesses. The purpose of the examination of these witnesses was not that contemplated by section 11270 of the 1931 Code; that is to say, the purpose of the examination was not

impeachment. When instructing the jury, the district court properly limited the purpose of this examination of the witnesses. This precautionary instruction was given by the court: "Upon cross-examination inquiry was permitted to be made of the witnesses, Vaughn and Eversman, as to their relation to certain litigation now pending in the district court of Jefferson county, Iowa, for the sole purpose of being considered by you as bearing upon the bias, if any, of such witnesses and in determining the weight and credit to be given to their evidence. You will consider such testimony for that purpose only and will not consider it as in any manner affecting or tending to affect the character or standing of said witnesses, or either of them, or as in any manner reflecting upon them or either of them."

A broad range is allowed an attorney in the cross-examination of a witness, and the limit of such range is a matter of legal discretion with the trial court. State v. Kendall, 200 Iowa 483, 203 N. W. 806; State v. Johnson, 215 Iowa 483, 245 N. W. 728. Within the proper range of cross-examination, an attorney for the state may ask questions tending to disclose a fact which may show the bias of a witness. State v. Calkins, 73 Iowa 128, 34 N. W. 777. During our discussion in the Calkins case, we said, reading on page 130:

"A witness introduced by the defendant testified that he saw Lawrence sign the instruments, and deliver them to defendant. But his testimony in that respect was contradicted by Lawrence. The district attorney was permitted, against defendant's objection, to show, on the cross-examination of the witness, that he was a bondsman for defendant in the case. The fact that the witness bore that relation to defendant, while it did not perhaps give him any pecuniary interest in the result of the trial, did tend to show that he felt a strong personal interest in defendant, and might properly be considered by the jury in determining what weight and credit ought to be given to his testimony."

Likewise it may be shown on cross-examination that the witness is indicted for a similar offense under similar circumstances. People v. Hrdlicka et al., 344 Ill. 211, 176 N. E. 308; McClelland v. State, 98 Miss. 735, 54 So. 251; Gray v. State, 4 Okl. Cr. 292, 111 P. 825, 32 L. R. A. (N. S.) 142. In the Gray case, the Oklahoma Criminal Court of Appeals said, reading on page 307:

"If two persons are indicted for the same offense, or for different offenses, and it should appear from the evidence that from the acquittal or conviction of one even a slight inference of the guilt or innocence of the other could be drawn, or that the fate of one could have any probable bearing, however remote, upon that of the other, and one should testify either for or against the other, under such circumstances it would *not* be error for either party to ask the witness and require him to answer whether he was then under indictment for that same or such different offense. * * * "

Therefore, under the record in the case at bar, it was not error for the state's attorney to cross-examine the witnesses in the manner and way above described.

VIII. Objections were interposed by the defendants to the refusal of the district court to give to the jury their requested instructions 4 and 5. These instructions related to the definition of conspiracy and the elements necessary to be proven before the defendants could be convicted thereof.

It is not clear on what basis the defendants predicate error on the court's refusal to give these instructions. So far as material, the district court embodied all essential portions of the requested instructions in its own instructions given to the jury. We said in State v. Salisbury, 209 Iowa 139, reading on page 143, 227 N. W. 589:

"Defendant asked for instructions which were refused, and rightfully so, because the subject-matter was covered by the instructions given by the court. See State v. Render, 203 Iowa 329, 210 N. W. 911."

To the same effect see State v. Levich, 174 Iowa 688, 156 N. W. 824.

All errors argued by the defendants have now been considered by us. See State v. Neifert, 206 Iowa 384, 220 N. W. 32; State v. Ivey, 196 Iowa 270, 194 N. W. 262.

Because, then, no error is found in the record, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

All Justices concur.